RECIEVED
UNION CORRECTIONAL INSTITUTION
FEB 11 20
BY:
FOR MAILING

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

AMENDED COMPLAINT

ORIGINAL

# CIVIL RIGHTS COMPLAINT FORM

## TO BE USED BY PRISONERS IN ACTIONS UNDER 42 U.S.C. § 1983

THOMAS R. HAYES,
Inmate # 053503.
(Enter full name of Plaintiff)

vs.

CASE NO: 4:19-cv-97-MW/CAS
(To be assigned by Clerk)

JULIE L. JONES, FORMER,
SECRETARY, et. Al.,
CORIZON HEALTH, INC., FORMER Health CARE Provider
CENTURION OF FLORIDA, CURRENT Health CARE Provider

(Enter name and title of each Defendant. If additional space is required, use the blank area below and directly to the right.)

**ANSWER ALL QUESTIONS ON THE FOLLOWING PAGES:**

FILED USDC FLND TL
FEB 13 '20 PM1:34

## I. PLAINTIFF:

State your full name, inmate number (if applicable), and full mailing address in the lines below.

Name of Plaintiff: Thomas R. Hayes
Inmate Number: 053503
Prison or Jail: Union Correctional Inst.
Mailing address: P.O. Box 1000
Raiford, Fl. 32083

## II. DEFENDANT(S):

State the name of the Defendant in the first line, official position in the second line, place of employment in the third line, and mailing address. Do the same for **every** Defendant:

(1) Defendant's name: Julie L. Jones - Individual Capacity
Official position: Former Secretary
Employed at: Department of Corrections
Mailing address: 501 S. Calhoun St.
Tallahassee, Fl. 32399-2500

(2) Defendant's name: Corizon Health, Inc - Official Capacity/Individual
Official position: Former Health Care Provider for FDC
Employed at: Corizon Health, Inc.
Mailing address: 12647 Olive Blvd.
St. Louis, Mis. 63141

(3) Defendant's name: Centurion of Florida, LLC - Official Capacity/Individual
Official position: Current Heath Care Provider for FDC
Employed at: Centurion of Florida, LLC
Mailing address: Paddock Park Prof. Bldg.
3200 S.W. 34th Ave. Bldg. 700, Suite 701
Ocala, Fla. 34474

**ATTACH ADDITIONAL PAGES HERE TO NAME ADDITIONAL DEFENDANTS**

## III. EXHAUSTION OF ADMINISTRATIVE REMEDIES

**Exhaustion of administrative remedies is required prior to pursuing a civil rights action regarding conditions or events in any prison, jail, or detention center. 42 U.S.C. § 1997e(a). Plaintiff is warned that any claims for which the administrative grievance process was not completed prior to filing this lawsuit may be subject to dismissal.** See page 3A

## IV. PREVIOUS LAWSUITS

NOTE: FAILURE TO DISCLOSE **ALL** PRIOR CIVIL CASES MAY RESULT IN THE DISMISSAL OF THIS CASE. IF YOU ARE UNSURE OF ANY PRIOR CASES YOU HAVE FILED, THAT FACT MUST BE DISCLOSED AS WELL.

A. Have you initiated other actions in **state court** dealing with the same or similar facts/issues involved in this action?
Yes( ) No(X)

1. Parties to previous action:
   (a) Plaintiff(s): N/A
   (b) Defendant(s): N/A
2. Name of judge: N/A Case #: N/A
3. County and judicial circuit: N/A
4. Approximate filing date: N/A
5. If not still pending, date of dismissal: N/A
6. Reason for dismissal: N/A
7. Facts and claims of case: N/A

**(Attach additional pages as necessary to list state court cases.)**

B. Have you initiated other actions in **federal court** dealing with the same or similar facts/issues involved in this action?

Yes( ) No(X)

1. Parties to previous action:
   a. Plaintiff(s): N/A
   b. Defendant(s): N/A
2. District and judicial division: N/A
3. Name of judge: N/A Case #: N/A
4. Approximate filing date: N/A
5. If not still pending, date of dismissal: N/A
6. Reason for dismissal: N/A

## III. EXHAUSTION OF ADMINISTRATIVE REMEDIES

Plaintiff has exhausted all available administrative remedies pursuant to 42 U.S.C. §1997(e) regarding denial / refusal of treatment, because of a "custom and practice" employed by Julie L. Jones and both contracted Healthcare Providers, Corizon Health, Inc. and Centurion of Florida.

Plaintiff took an additional step because Defendant Corizon Health Inc., was not able to address and reply to the FDC grievance process. Corizon Health had ended their contract in August of 2016. Plaintiff had written a Notice of Intent outlining his grievance with Corizon and forwarded it to former Woodrow Myers Jr. on October 30, 2018. Plaintiff attempted to negotiate a potential settlement agreement.

This notice was forward on to the Toomey Law Firm, in Ft. Myers, Florida. However, after several letters back and forth, including Plaintiff's signed consent for his medical records, Mr. Toomey seemed to be dragging this process out and had not attempted to obtain Plaintiff's records in over a month after having the signed consent.

Plaintiff has attached his formal and Appeal grievances exhausting the FDC's Administrative Remedies as well as the Notice of Intent to Corizon and accompany relevant letters.

7. Facts and claims of case: N/A

**(Attach additional pages as necessary to list other federal court cases.)**

C. Have you initiated other actions (*besides those listed above in Questions (A) and (B))* in **either state or federal court** that relate to the fact or manner of your incarceration (including habeas corpus petitions) or the conditions of your confinement (including civil rights complaints about any aspect of prison life, whether it be general circumstances or a particular episode, and whether it involved excessive force or some other wrong)?

Yes(X) No( )

If YES, describe each action in the space provided below. If more than one action, describe all additional cases on a separate piece of paper, using the same format as below.

1. Parties to previous action:
   a. Plaintiff(s): Thomas R. Hayes
   b. Defendant(s): Secretary - FDC
2. District and judicial division: Bradford County - Circuit
3. Name of judge: Green Case #: ?
4. Approximate filing date: 1980
5. If not still pending, date of dismissal: 1981
6. Reason for dismissal: Was transferred - became a moot issue.
7. Facts and claims of case: Living conditions.

**(Attach additional pages as necessary to list cases.)**

D. Have you ever had any actions in **federal court** dismissed as frivolous, malicious, failing to state a claim, or prior to service? If so, identify each and every case so dismissed:

Yes( ) No(X)

1. Parties to previous action:
   a. Plaintiff(s): N/A
   b. Defendant(s): N/A
2. District and judicial division: N/A
3. Name of judge: N/A Case Docket # N/A
4. Approximate filing date: N/A Dismissal date: N/A
5. Reason for dismissal: N/A

6. Facts and claims of case: N/A

**(Attach additional pages as necessary to list cases.)**

## V. STATEMENT OF FACTS:

State briefly the FACTS of this case. Describe how each Defendant was involved and what each person did or did not do which gives rise to your claim. In describing what happened, state the names of persons involved, dates, and places. Do not make any legal arguments or cite to any cases or statutes. You must set forth separate factual allegations in separately numbered paragraphs. You may make copies of this page if necessary to supply all the facts. Barring extraordinary circumstances, no more than five (5) additional pages should be attached. **(If there are facts which are not related to this same basic incident or issue, they must be addressed in a separate civil rights complaint.)**

Please see the following pages 5A through 5M

## V. STATEMENT OF FACTS

1. Plaintiff is currently incarcerated at Union Correctional Institution (herein after referred to as U.C.I. ) and at all times relevant hereto is under the care, custody, and control of the Florida Department of Correction, (herein referred to as (FDC). Plaintiff is currently (64) sixty-four years of age and has been continually incarcerated in the FDC since June of 1976.

2. Plaintiff was originally diagnosed with Chronic Hepatitis C, (herein after referred to as (cHCV) by a FDC doctor (Dr. Astacio) in or around October, 2001. He advised Plaintiff that he would be placed on a "Chronic Illness Clinic" herein after referred to as (C.I.C.) on at least a biannual review and monitoring of Plaintiff's (cHCV). He also informed Plaintiff that this current medical grade (one), would be change to a (two), due to this diagnosis.

3. The monitoring process (within the C.I.C. Review) basically consisted of taking blood samples biannually and sent off for evaluation of various bio-marks. Once the blood testing was completed by an outside lab and the printed report returned to the institution. Plaintiff would be placed on a medical call-out and seen by a clinician. Usually a ten minutes process, some times asking a question or two and reveal the lab results if requested, finished up by stating see you in six months.

4. In December of 2001, Dr. Astacio had Plaintiff sign an authorization for both a specialty evaluation and a biopsy. However, Plaintiff was transferred on 4/30/02 and never received either specialty evaluation or biopsy.

5. The Centers for Disease Control (CDC) in May of 2017 stated:

"Researchers estimate that about 2.7 million to 3.9 million people in the United States have Chronic Hepatitis C. Many people who have hepatitis C don't have symptoms and don't know they have this infection. About 75% of U.S. Adults who have Hepatitis C are baby boomers, born between 1945 and 1965."

6. The principal consequence of (cHCV) infection is infection of the liver, which causes inflammation that in turn may result in scarring of the liver (fibrosis). Liver scarring can significantly impair liver function and damage its crucial role in filtering toxins from the blood as well as making proteins involved in liver clotting and fighting infections. Liver scarring places (cHCV) patients at risk of liver and / or liver cancer.

7. The extent of liver scarring doesn't necessarily correlate with the symptoms one is suffering. An individual can be completely "Asymptomatic" and present with cirrhosis. Nor do symptoms have anything to do with what the risk of liver failure.

8. This District Court and the 11th Circuit have previously concurred, that (cHCV) presents a serious medical need, from a legal aspect.

9. On October 15, 2012, Corizon had signed a five year contract with the FDC, to provide Comprehensive Healthcare Services to inmates in Regions I and II and several other institutions within Region III of the FDC. U.C.I. is in Region II, where Plaintiff has resided since June, 2013.

10. Plaintiff arrived at his current institution, Union Correctional, (herein after referred to as (U.C.I.) in June of 2013. At that time, the for profit Health Care Provider was Corizon Health, Inc. (herein after referred to as Corzion).

11. Plaintiff contends that Corizon's policy and decision makers unofficially adopted a "custom and practice" of refusing to authorize the cost of treatment of Plaintiff's serious medical need (cHCV). This "custom and practice" was widespread covering all institutions under contract with Corizon, and employed throughout the duration of Corizon's contract.

12. Corizon through it's "custom and practice" (cost savings and profits) was the moving force behind Corizon's deliberate indifference, that directly resulted in Plaintiff's (cHCV) to progress to an advance stage of liver damage.

SB

Corizon's refusal to fund treatment of (cHCV) inmates was the standard 99.99% of the time, out of the several thousand (cHCV) inmates under Corizon's contracted care.

13. This Court had previously acknowledged that only (10) ten (cHCV) inmates, throughout the entire FDC had been treated with the revolutionary drugs (Direct-acting antivirals) prior to the Hoffer mandate rendered in December of 2017. Plaintiff is unaware at this point the actual breakdown of which (Healthcare Provider) treated those (10) ten (cHCV) inmates and who provided that funding for those treatments.

14. Dr. Aviles, a (Corizon employee) had submitted a consultation for specialty evaluation. The doctor had noted a previously request for biopsy that had never been performed. This coupled with Plaintiff's current exhibited physical symptoms. However, this request was denied by (Utilization Management). Corizon by contract was responsible for the cost for all such off-site specialty evaluation.

15. In late 2013 a new class of drugs known as (Directing-acting Antivirals) referred to as (DAA's) was approved by the (FDA) and was released on the market in 2014. These (DAA's) was the new revolutionary cure for (cHCV) and almost completely successful when used, with little or no side affects.

Corizon is a National Healthcare Provider, who previously and presently operates and is contracted to provide healthcare services for numerous prison systems across this country. Corizon was well aware of both the recognized national standard of care and those associated cost required to provide minimum constitutionally adequate medical care and treatment for (cHCV) inmates.

17. Corizon was well aware through the huge multimillion dollar contract signed with the third largest prison system in the country, through their prior assessment of those prospective medical files, the significant number of diagnosed

SC

(cHCV) inmates who would require proper evaluation and treatment by the recognized national standard of care.

18. Under Corizon's contract with FDC, there were two ways that doctors could obtain drugs needed for the inmates under Corizon's care. Most drugs were listed on an FDC-approved list, referred to as a formulary. Those drugs were paid directly by F.D.C. Drugs not listed on the formulary, had to be specially requested. These Direct-acting antivirals (DAA's) were not on the FDC's formulary while Corizon was under contract. Specialty requested drugs were paid by Corizon, such drugs required a "Drug Exception Request." (D.E.R.).

19. Plaintiff had been submitted for treatment of his (cHCV) three times by Corizon's own hired medical personnel. April of 2015, July of 2015 and January of 2016. All three request were rejected by Corizon because of their "custom and practice" of refusal to authorized the cost of treatment for (cHCV) inmates. Plaintiff had been re-submitted for another biopsy in February of 2016, it too was rejected. Although this "custom and practice" was not formally approved by a decision maker, the act was so widespread as to have the force of a written policy, throughout all institutions under Corizon's Healthcare. This "custom and practice" was the moving force behind the constitutional violation of; refusal of treatment to (cHCV) for non-medical reasons, cost.

20. Corizon had no reliable medical justification to support these three denials of Plaintiff's treatment. This treatment was medically necessary to treat and cure this deadly virus. In contrast, Corizon offered no alternate treatment. Corizon was relied to simply continue to monitor, via C.I.C. Reviews, which were relied on to submit these previous recommendations for treatment. These actins are comparable to a gun-shot victim, where the medical personnel would take vitals and change the bandages, but the company or Provider refused to authorize the cost of the surgery to remove the bullet, knowing the future consequences.

21. This "custom and practice" of Corizon's, refusal to authorize cost for treating (cHCV) inmates was not isolated in the FDC. Corizon had a similar contract with St. Lucie County Jail, in South Florida. *Curry v. Corizon,* 2017 U.S. Dist. 41502. *Curry* a pretrial detainee was in St. Lucie County Jail from 2010 through 2014. Corizon had contracted with the County for Healthcare Services during this time. *Curry* was diagnosed with (cHCV) in the County Jail. He was initially informed the disease (cHCV) was in its early stages and didn't require treatment. However, in 2013 a liver biopsy had determined that *Curry's* (cHCV) had progress to "advance stage" liver disease. A Corizon specialist, Dr. Kennedy treating *Curry*, allegedly stated he would try to persuade Corizon to cover the cost for treatment. However, Dr. Kennedy later informed *Curry* he was not able to convince Corizon to approve the cost of treatment, because it was to expensive.

22. The *Curry* situation occurred prior to Plaintiff's recommendations for treatment. They (Corizon's) policy and decision makers were aware that *Curry*'s situation was confirmed by biopsy ordered through their Specialist yet, the specialist request for treatment was denied, solely for non-medical reasons, cost only. There can be no doubt, that not only was there a "custom and practice" of refusal to authorize funding for (cHCV) treatment, but that Corizon's decision had nothing to do with medical facts or considerations.

23. Because of Corizon's "custom and practice" of refusal to authorize funding for treatment of (cHCV) individuals under their contracted care, Plaintiff's disease was knowingly allowed to progress to "severe fibrosis." Plaintiff was subjected to wanton and unnecessary pain and suffering for additional two and a half years before Court ordered treatment.

24. It is Plaintiff's contention that additional harm was further done by knowingly allowing the (cHCV) to progress. On top of the advanced stage of

damage done to the liver by the disease, but because of it Plaintiff is now subjected to a life-time of monitoring his severe damaged liver, biannually to check for potential liver cancer and other liver related issues. Plaintiff to this day suffers a daily constant dull ache in the liver area that has been documented, after successful treatment.

25. It is Plaintiff's contention that Corizon's "custom and practice" of refusing to authorize funding for treatment for non-medical reasons, was of deliberately indifferent to Plaintiff's serious medical needs. Knowingly violated Plaintiff's constitutional rights, their contractual obligation and ignored the widely published medical data and strong recommendations from renowned medical entities, such as (AASLD) the (CDC) against deferral of treatment of (cHCV) individuals. Plaintiff's medical file is repleted with evidence of escalation of (cHCV) and undeniable liver damage, coupled with three separate recommendations for treatment all rejected because of this "custom and practice" of costing savings and corporate profits.

26. Defendant Julie L. Jones, former Secretary of FDC, began that position in January 5, 2015, appointed by former Governor Rick Scott. Defendant Jones served until January of 2019.

27. Plaintiff contends, that as the FDC's Secretary, defendant Jones was ultimately responsible for the custody and care of all inmates within the FDC, as well as responsible for all FDC's polices and practices per State statutes.

28. This Court in *Hoffer v. Jones*, preliminary hearing had stated: "Plaintiff's have shown that Defendant has been deliberately indifferent to the class's serious medical needs." Plaintiff was a member of that class. This Court went on to state: "Specifically, this Court finds that FDC will not treat    infected inmates in an appropriate and timely manner."

29. Plaintiff contends that Defendant Jones, for the next three years

proceeding her appointment as FDC's Secretary, exhibited deliberate indifference towards Plaintiff's and all other (cHCV)'s serious medical needs of treatment for (cHCV), despite the numerous warning signs throughout that period.

30. Defendant Jones was put on Notice by multi-avenues of a systemic widespread medical problem (cHCV) throughout the FDC and failed to take appropriate action to properly address and resolve said problem. All rooted in concerns of cost. This fact was established by this Court in both the preliminary and permanent injunctions issued by this Court and essentially admitted by Defendant.

31. In 2015, Thomas Reimers, defendant Jones's Director of Health Services Administration had submitted a legislative budget proposal for 6.5 million to purchase these (Direct-acting antivirals). This proposal was in response to (cHCV) inmates not being treated and some actually dying because of failure to do so.

32. Director Reimers had specifically pointed out in the problem statement area that;

> "The Department has no funding to provide treatment to inmates with Hepatitis C who meet current national treatment criteria."

He went on to state:

> "Inmates with Hep C are at a very high risk for developing Cirrhosis and liver cancer if left untreated."

33. It is Plaintiff's contention that this 2015 proposed budget request was denied because of the adopted "custom and practice" of refusal to fund treatment for (cHCV) inmates by defendant Jones.

34. In 2016, Director Reimers had submitted a second legislative budget proposal for 29 million to purchase these necessary medication (DAA's) for (cHCV) inmate treatment. Again stating there is still no specific funding to provide

treatment for now 500 inmates who meet current national treatment criteria.

35. This second request also informed defendant Jones, that a federal court in Western District of Washington (*B.E. v. Teeter,* 16-CV-00227) had ordered the State to provide (cHCV) treatment under Medicaid using the new protocols without regards to fibrosis. Florida's Agency for Health Care Administration changed it's policy to reflect this recent Federal Court's decision. However, despite these medical and legal ramifications pointed out within this second budget proposal, it was denied to move on to the legislators, because of defendant Jones embrace of the "custom and practice" of no funding (cHCV) treatment.

36. In June of 2016, Defendant Jones had revised FDC's (HSB) #15.03.09, Supplement #3. There are two relevant aspects of this revision that were revealed.

A. Defendant Jones now recognizes (two years after they became available on the market) that these (DAA's) were not only nationally recognized as the standard of care for treating (cHCV) inmates but are necessary to provide the "cure" of this deadly disease.

B. Defendant Jones did not blindly authorize the FDC's (HCV) Revision of June 2016. Defendant Jones consulted with a variety of sources, like Director Reimers previous submitted legislative budget proposal, pointing out the risk of failing to treat eligible inmates and the potential risk of litigation against the FDC.

37. However, despite the Revision of the FDC's Hepatitis policy, it was only a paper change or lip service. There was no funding for these now recognized (DAA's) by the FDC. In fact, Director Reimer submitted his second legislative budget proposal for funding of the DAA's again. Director Reimer pointed out the following facts:

A. The Department has no specified funding to provide treatment to inmates with Hep C who meet current national treatment criteria.

SH

B. Inmates with (cHCV) are at very high risk for developing cirrhosis and liver cancer if left untreated.

C. The Department estimates that approximately (500) inmates are at highest risk and "in need" of this new medication.

D. That FDC had recently revised it's (Health Services Bulletin 15.03.09, Supplement #3, to reflect the F.B. O.P. (HCV) policy.

E. The recent federal case of *B.E. v. Teeter,* (Case No: 16-CV-00227) from the Western District of Washington.

38. It is Plaintiff's contention, that Defendant Jones was continually put on "Notice" throughout her first three years as FDC's head supervisor, of this widespread abuse, of no funding for treatment of (cHCV) inmates was obvious, flagrant and rampant. The above stated facts, coupled with that fact (cHCV) inmates were dying from failure to treat and their contracted Healthcare Providers were in breach of contract for either refusing to fund the cost of treatment or even submit (cHCV) inmates for treatment, support a strong inference that Defendant Jones either directed her subordinators, agents to act unlawfully, or knew that the subordinates, agents would continue to act unlawfully and failed to stop them from doing so.

39. It is Plaintiff's contention that defendant Jones is the one person who was in a position to bring about change within her first year in office. Had she done so, it would have saved many lives from pain, suffering, and even death for some. However, Defendant Jones made an informed choice of not allowing two legislative budget proposals to go to the Florida Legislators to decide the submitted facts. She took no legal action to hold Corizon legally responsible for breech of contract to paid for this treatment. She took no actions throughout Centurion's first

(18) months to inquire why none of the previous (cHCV) inmates who were being denied treatment, were now not even being submitted at all.

40. Defendant Jones revised policy of June, 2016 (15.03.09, Supplement #3) was facially unconstitutional, because of the known and obvious consequences of blocking all attempts to fund it properly were deliberate, whether at political direction or otherwise. Defendant Jones was the single individual who knew the scope of the system wide medical problem and the authority to bring the necessary change, but deliberately refused to do so.

41. Centurion of Florida, herein after referred to as (Centurion) entered into a contract (#C2869) with the FDC in 2016, to provide comprehensive health care services that were to meet constitutional and community standards. U.C.I. where Plaintiff resides is one of those institutions under Centurion's contracted care.

42. It is Plaintiff's contention that Centurion had adopted an unofficial "custom and practice" by their "policy" decision makers of refusal to recommend / or treat (cHCV) inmates by their medical personnel under their contracted care which was all rooted in concerns of cost / funding. It is important to make a clear distinction between, monitoring care versus actual treatment, administering medication to cure the disease.

43. This "custom and practice" was well established throughout all institutions under Centurion's contracted care. It was so well settled and persistent with it's widespread practice, that it's institutional medical personnel would not recommend specialty evaluation, (such as biopsies or fibro-scans) let alone actual treatment 99.99% of the time of all (cHCV) inmates under Centurion's care. This Court had verified this fact by the following quote from the *Hoffer v. Jones,* preliminary hearing:

> "FDC began a new contract with Centurion. But the Change in contractor did not come with a change in

Behavior; inmates with HCV were still not being treated."

44. Centurion was aware of the following relevant facts:

    A. That there were several thousand (cHCV) inmates under their contracted care.

    B. That (cHVC) was a serious medical need that if left "untreated" can and does lead to pain, suffering, irreparable liver injury and even death.

    C. That (cHCV) inmates in the FDC had died from (cHCV) from failure to treat them.

    D. They were aware that FDC had recently (June of 2016) had revised (HSB) 15.03.09, Supplement #3, recognizing that treatment with (DAA's) was the new standard of treatment for (cHVC) inmates.

    E. Centurion knew or should have known that denying medical treatment for non-medical reasons (cost) was a constitutional violation.

    F. Doctor Dewsnup employed by Centurion at the time, was intimately familiar with HCV treatment. Dr. Dewsnup stated in testimony at the Preliminary Hearing, that he encouraged all (Centurion) doctors working with FDC to refer-infected inmates for DAA treatment.

45. In October of 2016 Plaintiff was having his first (C.I.C.) cHCV Review by Centurion personnel. Dr. Perez-Lugo, the Chief Health Officer on site, Dr. Perez-Lugo was familiar with Plaintiff's medical condition as he had not only reviewed Plaintiff's (cHCV) in the past while employed under Corizon, he had previously submitted Plaintiff for treatment back in July, 2015. He had also submitted a request for a biopsy in February of 2016, both were denied by U.M.

46. Prior to the October 17, 2016 (C.I.C.) Review, Plaintiff had the usual

blood drawn for the lab report. This review by the outside lab, revealed that Plaintiff's ALT's at 166 and AST's at 143. The clinical report on specimen ID: 942011053, showed (8) clinical abnormalities. These bio-markers were at their highest levels recorded in Plaintiff's medical records since the original 2001 diagnoses. In fact, when Dr. Perez-Lugo had previously recommended treatment in July of 2015, the levels were not this high. Yet, because of Centurion's "custom and practice" Dr. Perez-Lugo would not recommend any actions be taken.

When Plaintiff pressed Dr. Perez-Lugo on this, he exclaimed my hands are tied, they (Centurion) will not allow me to recommend any further action be taken. He refused any further discussion on the matter and excused Plaintiff from his office.

47. This was not an isolated incident, but in fact the norm for all (cHCV) inmates at U.C.I. and apparently throughout all Centurion institutions. 99.99% of (cHCV) inmates were not being recommended, let alone being treated. After this Court granted the preliminary injunction in *Hoffer v. Jones,* a large group of (cHCV) inmates were having blood samples drawn for evaluation of the severity stage of each individual for staging priority of treatment.

48. Plaintiff's lab report showed his score was a .93, in a range between .75 & 1 for "severe fibrosis" with a .72 for severe activity. This report is dated November 2017, Plaintiff was informed on March 5, 2018. Plaintiff was informed by Dr. Perez-Lugo that he was identified as a "Priority Level One" for treatment and would start on March 9, 2018.

49. This was the first time since 2001 that Plaintiff had ever been informed of his actual stage of severity of the disease. Without this Court's invention, Plaintiff would probably still be in the blind as to the actual medical state of his liver's condition. Plaintiff contends that FDC, Corizon and Centurion had maintained "plausible deniability" by previously rejecting biopsies, specialty

reviews or fibrosure blood test.

50. It is Plaintiff's contention that Centurion was complicit with FDC and acted with deliberate indifference to the serious medical needs of Plaintiff and others in adopting and implementing this "custom and practice" of no recommendations for treating (cHVC) inmates, all rooted in non-medical reasons, cost and funding.

51. After the Court ordered staging, approximately (80) (cHVC) inmates at U.C.I. alone were identified as "Priority Level One" for treatment. These men were also subjected to the same "custom and practice" of (no recommendations for treatment) of (cHCV). Plaintiff is unaware of the exact number statewide, but it was very significant and blatantly obvious that those who should have been submitted for treatment were deliberately being ignored.

52. Plaintiff contends that this "custom and practice" was adopted and carried out by Centurion's decision makers, that their medical personnel on the contracted sites would not recommend treatment for (cHCV) inmates in order to shield FDC and their lack of appropriated funds, non-medical reasons. This "custom and practice" denied Plaintiff of adequate medical care by constitutional standards. Defendant Centurion ignored the medical necessity of an adequate evaluation of Plaintiff's serious medical needs. The failure to provide such required care condemned Plaintiff and also other (cHCV) inmates to unnecessary further pain, suffering and to some even death. Centurion's essentially total lack of recommendations for (cHCV) treatment, eliminated pressure on FDC to obtain the necessary funding to properly address this urgent medical need, thus their complicity.

SM

## VI. STATEMENT OF CLAIMS

### COUNT ONE

### Deliberate Indifference to Serious Medical Needs

53. Plaintiff incorporates statements of facts, paragraphs #10 through #25 that Defendant "Corizon" (1) A Private entity acting under contract with FDC and under color of state law, violated Plaintiff's 8th and 14th Amendment rights to be free from cruel and unusual punishment by being deliberately indifferent to Plaintiff's serious medical needs. The Defendant Corizon had adopted a "custom and practice" that intentionally refuse to authorize funding for treatment of Plaintiff's (cHCV), causing irreversible liver damage which subjected Plaintiff to a life-time of monitoring his liver for potential future liver cancer and other liver related issues for non-medical reasons, cost of treatment.

### COUNT TWO

### Deliberate Indifference to Serious Medical Need/ Failure to Adequately Supervise To Provide Adequate Medical Care.

54. Plaintiff incorporates statements of facts, paragraphs #26 through #40. Defendant Jones (2) acting under authority and color of state law, violated Plaintiff's 8th and 14th Amendment rights to be free from cruel and unusual punishment by being deliberate indifferent to his serious medical needs. Defendant Jones adopted and / or embraced a "custom and practice" of no funding for treatment of (cHCV) Plaintiff and others.

55. Plaintiff incorporates statement of facts, paragraphs #26 through #40. Defendant Jones (2) acting under authority and color of state law, violated Plaintiff's 8th and 14th Amendment rights, by failing to adequately supervise FDC employee and agents of Centurion to ensure adequate medical evaluations and

medical treatment of (cHCV) Plaintiff and others.

1). In their official capacity.

2). In her individual capacity.

**COUNT THREE**

**Deliberate Indifference To Serious Medical Needs**

56. Plaintiff incorporates statement of facts, paragraphs #41 through #52. Defendant "Centurion" (1) A private entity acting under contract with FDC and under color of state law, violated Plaintiff's 8th and 14th Amendment rights to be free from cruel and unusual punishment by being deliberately indifferent to Plaintiff's serious medical needs. Defendant Centurion adopted a "custom and practice" of (no recommendations for treatment of (cHCV) inmates), in order to shield FDC's lack of appropriated funds, thereby denying Plaintiff of constitutionally adequate medical evaluation of his serious medical need. Defendant's failure to provide adequate evaluations had lead to continued pain, suffering and subjected Plaintiff to a life-time of monitoring his liver for potential liver cancer in the future, due to the extensive / irreversible damage to Plaintiff's liver.

**VII. <u>RELIEF REQUESTED</u>**

57. Demand for a jury trial / bench trial.

58. Plaintiff seeks compensatory damages in the amount of $50,000.00 dollars from each Defendant jointly and severally for great physical pain and suffering.

59. Plaintiff seeks punitive damages in the amount of $100,000.00 dollars from all Defendants jointly and severally for intentionally, wanton and total disregard for human life by inflicting not only pain, suffering, and

mental anguish, but subjecting Plaintiff to a life-time of monitoring of Plaintiff's liver for potential future liver cancer because of the extensive/ irreversible liver damage that could and should have been timely treated with available medication, but ignored this risk to save money.

60. Plaintiff seeks attorney fees, whether *pro bono* or privately acquired by Plaintiff during this litigation and all cost and expenses brought on by this litigation.

61. The cost and expenses for expert testimony, travel, documents, and any other of expense connected to such expert witness on behalf of Plaintiff.

62. All Court cost, fees and other expenses incurred by Plaintiff to bring forth this litigation.

63. Any other relief this Court decides is just.

## VI. STATEMENT OF CLAIMS:

State what rights under the Constitution, laws, or treaties of the United States you claim have been violated. Be specific. Number each separate claim and relate it to the facts alleged in Section V. **If claims are not related to the same basic incident or issue, they must be addressed in a separate civil rights complaint.**

See pages 6A & 6B

## VII. RELIEF REQUESTED:

State briefly what relief you seek from the Court. Do not make legal arguments or cite to cases/ statutes.

See pages 6B & 6C

**I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING STATEMENTS OF FACT, INCLUDING ALL CONTINUATION PAGES, ARE TRUE AND CORRECT.**

2-11-2020
(Date)

Thomas R. Hayes
(Signature of Plaintiff)

**IF MAILED BY PRISONER:**

I declare (or certify, verify, or affirm) under penalty of perjury that this complaint was (check one):
☑ delivered to prison officials for mailing or ☐ deposited in the prison's internal mail system on:
the 11th day of February, 2020.

Thomas R. Hayes
(Signature of Plaintiff)

Revised 03/07

# APPENDIX
# OF
# EXHIBITS

**Exhaustion Documents**

**by date order**

with (22) pages

**PART B - RESPONSE**

| HAYES, THOMAS | 053503 | 1803-213-119 | UNION C.I. | A11021 |
|---|---|---|---|---|
| NAME | NUMBER | FORMAL GRIEVANCE LOG NUMBER | CURRENT INMATE LOCATION | HOUSING LOCATION |

Log #1803-213-119

THIS DOCUMENT MAY CONTAIN CONFIDENTIAL HEALTH RECORD/CARE INFORMATION INTENDED FOR THE ADDRESSEE ONLY. UNAUTHORIZED RELEASE OR DISCLOSURE MAY VIOLATE STATE AND FEDERAL LAW.

Your request for Administrative Remedy or Appeal has been reviewed and evaluated.

Reviewed records indicate that you currently being followed by the clinician in Clinic for this issue. There is no indication that you have been denied medical care or access to medical. Should you have questions or concerns about your current treatment plan, Sick-Call is available so that you may present your concerns to your current health care team.

Based on the above information, your grievance is denied.

You may obtain further administrative review of your complaint by obtaining Form DC1-303, Request for Administrative Remedy or Appeal, completing the form, and providing attachments as required by Chapter 33-103 and forwarding your appeal to the Bureau of Inmate Grievance Appeals, 501 South Calhoun St., Tallahassee, Florida, 32399-2500, within 15 calendar days of this mailed response.

E. Perez, CHO

T. Knox, Assistant Warden

4/5/18

SIGNATURE AND TYPED OR PRINTED NAME OF EMPLOYEE RESPONDING

SIGNATURE OF WARDEN, ASST. WARDEN, OR SECRETARY'S REPRESENTATIVE

DATE

**MAILED**

APR 06 2018

UCI GRIEVANCE OFFICE

FLORIDA DEPARTMENT OF CORRECTIONS

REQUEST FOR ADMINISTRATIVE REMEDY OR APPEAL

☐ **Third Party Grievance Alleging Sexual Abuse**

TO: ☒ Warden ☐ Assistant Warden ☐ Secretary, Florida Department of Corrections

From or **IF Alleging Sexual Abuse**, on the behalf of:

Hayes, Thomas R. — Last First Middle Initial

053503 — DC Number

Union - S.W. Unit — Institution

Part A – Inmate Grievance

This is a Medical Grievance

Although I am currently being treated for CHCV) as of 3-9-18 and the treatment has been highly successful in its cure rate of the disease, unfortunately, it does not reverse the damage already caused by the progression of the disease.

Because of the Florida Department of Corrections, this institution and its contracted Health Care Provider's inadequate policies & practices, failure to "timely treat" me with these (DAA's) direct-acting antivirals four years ago, (which were available then) the disease has progressed to irreparable injury and cirrhosis.

Because of this failure to provide timely treatment that meets

Medical

FLORIDA DEPARTMENT OF CORRECTIONS

REQUEST FOR ADMINISTRATIVE REMEDY OR APPEAL

RECEIVED
APR 19 2018
Department of Corrections
Inmate Grievance Appeals

☐ **Third Party Grievance Alleging Sexual Abuse**

TO: ☐ Warden ☐ Assistant Warden ☒ Secretary, Florida Department of Corrections

From or **IF Alleging Sexual Abuse**, on the behalf of:

HAYES THOMAS R. — 053503 — Union Correctional - SW Unit

Last First Middle Initial — DC Number — Institution

18-6-16849

Part A – Inmate Grievance

This is an Appeal Grievance, with the attached initial grievance and response, in accordance with. F.A.C. Chapter-33

The institutional response failed to address the issue, which is: "timely treatment" with newly available DAAs. The Secretary of F.D.O.C., Union Correctional Inst., and the two Health Care Providers (Corizon & Centurion) particularly for the last four years, have been deliberately indifferent to my serious medical needs.

Since mid-2013, these new revolutionary drugs called (DAAs) that are FDA approved, have been available. They have been proven to be highly effective of removing the virus (HCV) from the patient. (95% to 97%) Failure to timely treat with these new (DAAs) to stop the progress of injury and rid the body of the virus, is inhumane and unconstitutional. This failure has allowed the diease to now progress to "severe fibrosis", confirmed by. outside lab reports.

**STATE OF FLORIDA**
**DEPARTMENT OF CORRECTIONS**
**INTEROFFICE MEMORANDUM**

A1102

**DATE:** **June 5, 2018**

**TO:** **I/M Hayes,Thomas DC# 053503**

**INSTITUTION:** **Union CI**

**FROM:** **Bureau of Inmate Appeals**

**RE:** **CORRESPONDENCE**

---

1)____Your administrative appeal was received, reviewed and recently answered. You should soon receive a copy, if you haven't already.

2) X Your administrative appeal has been received in our office and is still under investigation. As soon as our investigation is complete, you will receive an answer. Appeal #18-6-16849 was forwarded to Health Services in Central Office for their review and/or response,

3) ____Your administrative appeal has not been received in this office.

4) ____Departmental Rule 33-103.007, Appeal to the Secretary, states, "attachments are considered a part of the grievance and will not be returned to the Inmate, except in those cases where the Inmate submits sufficient copies of the attachments at the time the grievance appeal is filed". In reviewing your file, I find that you did not provide sufficient copies of the documents required.

5) ____There is no provisions in the Inmate Grievance Procedure for you to appeal a decision already rendered by this office.

6) ___ The grievance procedure requires that you: 1) use proper forms when initiating a grievance, and 2) that you initiate your grievance at the appropriate level of the procedure as outlined in Chapter 33-103, subsections .005 informal grievance; .006 formal grievance—institution or facility; and .007 appeals to the Office of the Secretary. Your communication to this office is returned to you for reason 1 or 2 or both as applicable. You may re-initiate your complaint following proper procedures. You must be within the appropriate time frame for your appeal to be accepted.

7) X 1) The grievance procedure or the appeals office is not to be used for correspondence purposes. 2) The act of asking questions or seeking information, guidance or assistance is not considered to be a grievance. 3) You cannot use the grievance procedure to complain about issues not under the control of the Department. Refer to Chapter 33-103.001.

8) ____ When (re)submitting an appeal, you must write that appeal on a new/unused DC1-303 form, attach all pertinent forms and continuation sheets to include the formal grievance and file within the appropriate time frame.

**NOTE: Your correspondence was forwarded to this office for review and response.** Furthermore, if you fear staff, you need to file an informal to the Colonel. The Colonel should have the opportunity to address these issues regarding staff at the institution. When making allegations of staff misconduct, provide all pertinent information such as names, dates, times, places and specific details. If you fear another inmate, contact the shift officer in charge for immediate action. If you feel you need medical attention, contact the institutional medical department via the sick call/emergency process. Each grievance/appeal should address only one issue. Seek assistance from the library or a staff member for a better understanding of the grievance process.

___W. Millette_______________
Correctional Services Assistant Consultant

MAILED/FILED
WITH AGENCY CLERK

JUL 20 2018

Department of Corrections
Bureau of Inmate Grievance Appeals

**PART B - RESPONSE**

| HAYES, THOMAS | 053503 | 18-6-16849 | UNION C.I. | A11021 |
|---|---|---|---|---|
| NAME | NUMBER | GRIEVANCE LOG NUMBER | CURRENT INMATE LOCATION | HOUSING LOCATION |

Appeal Denied:

Your request for administrative remedy was received at this office and it was carefully evaluated. Records available to this office were also reviewed.

It is the responsibility of your health care staff to determine the appropriate treatment regimen for the condition you are experiencing.

It is determined that the response made to you by Dr. Perez on 4/5/2018 appropriately addresses the issues you presented.

Records provided to this office reveal that you are currently being treated for the medical concern you are grieving.

Please be advised that you cannot use the grievance process for monetary gain and/or tort claims.

Should you experience problems, sick call is available so that you may present your concerns to your health care staff.

CONFIDENTIAL HEALTH RECORD/CARE INFORMATION INTENDED FOR ADDRESSEE(S) ONLY. UNAUTHORIZED RELEASE OR DISCLOSURE MAY VIOLATE STATE AND FEDERAL LAW.

Michelle Schouest, IISC

| Michelle Schouest | [signature] | 7/16/18 |
|---|---|---|
| SIGNATURE AND TYPED OR PRINTED NAME OF EMPLOYEE RESPONDING | SIGNATURE OF WARDEN, ASST. WARDEN, OR SECRETARY'S REPRESENTATIVE | DATE |

RECIEVED
UNION CORRECTIONAL INSTITUTION
OCT 30 2018
BY: FOR MAILING

Woodrow A. Myers, Jr.
Chief Operating Officer
103 Powell Ct.
Brentwood, TN 37027

October 30, 2018

Re: Notice of Intent

Dear Mr. Myers:

This letter of intent serves a twofold purpose. 1). to give you and your company Corizon an opportunity to address and possibly resolve the following issues. 2). In the event it is not resolved, you are given notice that legal proceeding will have to ensue.

Your company Corizon had a substantial contract with the State of Florida, via the Florida Department of Corrections, which ended in August of 2016. Union Correctional was one of the Institutions that your company provided medical care for, it was in region II of Florida.

I arrived at Union Correctional on June of 2013. I had been diagnosed with (HCV) since 2001 and had been on a Chronic Illness Clinic (C.I.C.) since.

On 9/20/2013, while conducting a review of my (HVC), Dr. Aviles had submitted a request for special evaluation, noting on the document that a biopsy had previously been requested, but never performed. The evaluation was denied by U.M. (utilization management) and signed by Dr. R. La Fontant indicating, reliance on enzymes levels.

On 4-29-2015, 7-27-2015 and 1-25-2016, I was submitted for treatment of my (HVC) at each of these (C.I.C.) reviews by your medical staff, only to be refused for non-medical reasons, (utilization management) without the benefit of a review by a specialist. (I purchased a copy of each of these medical records recently, from the medical department at .15 a page)

The contract at the time between the State of Florida and Corizon contained the following proviso re chronic diseases:

> "Intervention for inmates with chronic diseases
> Must meet general recognized standard of case."
> Page 8 para 2

Dr. Hood, working for Corizon in July 2015, gave a deposition where he explained that Corizon is a "full risk" health care provider. Corizon assesses the inmate population and creates a budget. Then for a pre-agreed contract price, Corizon employs all medical staff in the facility and covers the cost of medication, off-site referrals and hospitalization. (See Davidson v. Corizon, Case No. 6:11-cv-03929-MHH out of Alabama)

It is my contention that Corizon, yourself and other management officials who were within the Florida region II and your utilization management personnel, through the unofficial custom and practice (that was the moving force behind) of refusing specialist evaluation and rejecting submitted recommendations for treatment on three separate times.

As a direct result of this unofficial custom and practice to save cost/profits, I not only suffered unnecessary pain, both physical and mental, but my (HCV) disease progress to " severe fibrosis " as confirmed by a fibro-test administer in November of 2017, which was F.D.A. approved since 2009 and had been available to your company.

Thanks to the case of **Hoffer v. Jones**, were the federal court granted a preliminary injunction, treatment was provided. Although I am currently a sustain responder to the treatment, which was available the entire three years I was under your company's care. I am now at a considerable lifetime risk of (two to five) time's higher rate of developing liver cancer in the future. Because the disease was allowed to progress to severe fibrosis and not treated under your medical care. I still continue to have pain and discomfort because of the damaged caused to the liver and allowed to progress to an advance liver damage, because of your company's refusal to treat. The treatment received, removed the virus from the body, it did not repair the damaged caused by the disease.

It is my contention that because of this unofficial custom and practice of (no off-site evaluation and no-treatment) policy of Corizon, yourself and the various management personnel within this region II, were knowingly deliberately indifferent to my serious medical need and as a result, violated my constitutional right to be free from cruel and unusual punishment, all for the sake of profits.

Your company had not treated but a couple of (HVC) inmates with (DAA's) out of several thousand under your care. This fact was confirmed by the federal court in the case of **Hoffer v Jones**. I also have numerous (Declarations) from men who experienced mirrored circumstance of their (HCV) reviews and refusal of treatment, within the same time frame here and the same medical personnel.

Although you cannot turn the clock back and correct this problem, you have an opportunity here and now to somewhat compensate for these horrific actions.

If, you or your legal department have not responded with any negotiation of an adequate settlement within (30) thirty days from the stamp date on this letter, from the institutional mail room personnel, I will deem this as a denial and have no choice but to proceed to federal court for adequate compensation.

Respectfully, Thomas R. Hayes

Thomas R. Hayes #03503
Union Correctional Institution
P.O. Box 1000
Raiford, Fl. 32083

pc: personal copy



THE TOOMEY LAW FIRM

The Old Robb & Stucky Building
1625 Hendry St., Suite 203, Ft. Myers, Florida 33901
Telephone: 239.337.1630 / Facsimile: 239.337.0307
www.thetoomeylawfirm.com

Reply to: gat@thetoomeylawfirm.com
Direct Line: 239.337.0103
November 7, 2018

Thomas R. Hayes, #053503
Union Correctional Institution
PO Box 1000
Raiford, FL 32083

Re: October 30, 2018 Notice of Intent

Dear Mr. Hayes:

This office represents Corizon Health, Inc. I am in receipt of notice letter you recently sent to my client. To evaluate this case, I will need a copy of your Florida Department of Corrections medical records. Please complete and sign the enclosed release and mail it back to me in the enclosed envelope.

Gregg A. Toomey

GAT/hms
Enclosures

RECIEVED
UNION CORRECTIONAL INSTITUTION
NOV 16 2018
BY:
FOR MAILING

The Toomey Law Firm
Gregg A. Toomey,
1625 Henry St., Suite 203
Ft. Myers, Florida. 33901

November 16, 2018

Dear Mr. Toomey

I am in receipt of your letter dated November 7, 2018 in reference to the notice of intent sent to your client (Corizon Health) on October 30, 2018.

I also understand your position to want to review my entire medical record. However, I do not feel it is in my best interest to allow your firm, a potential adversary in court, full access to these files at this time. If we cannot come to agreement on an adequate compensation for the deliberate indifference of my serious medical needs by your client, this matter unfortunately will have to proceed to the Northern District Court, Tallahassee division, under 28 U.S.C 1983 suit.

I'm sure you are aware that this is the same division where the Judge M. Walker, in Hoffer v. Jones who granted the preliminary injunction, that started the treatment for thousands of (HCV) inmates within the Florida Department of Corrections. The FDC is still paying a hefty price (millions) for this treatment.

After reading this (5) five day hearing, in part the judge made it clear, that both your client and Wexford Health, had both failed to provide the recognized standard of care for (HCV) inmates. In fact, some inmates had even died due to failure to treat!

I am specifically aware of the case of Saleem v. Corizon, where the Middle District Court, Jacksonville division and appointed Harrell & Harrell as attorney of record. That case was settled by your client several months back. His (Saleem's) medical situation was almost a mirror case as mine. The same time frame as my situation, with the same personnel involved here at U.C.I. under your client's care. However, he failed to do his research as I have and discovered a very important aspect of this situation.

Because of this deliberate indifference to my serious medical need and failure to treat me accordingly to the nationally recognized standard of care, with the available known cure ( direct-acting antivirals ) not only did I experience the unnecessary pain and suffering, but because of your client's refusal to timely treat me, rejecting their own medical personnel's

recommendations to do so on three separate occasions, this conduct allowed the disease to progress to "severe fibrosis" and now subjects me to a life time risk of (2 to 5)times higher of developing liver cancer in the future. This is a medical fact published by the HCV-Guidance and the C.D.C. and widely known nationally in the medical community, including your client from 2014 to date. Your client had failed to treat 99.9% of all (HCV) inmates under their care, because of their unofficial custom, practice to save cost/profits.

To specifically address our situation, I have enclosed copies of some of my medical records, which in fact substantiate my medical contentions. After reviewing these documents and reading the Hoffer v. Jones case and the Saleem v. Corizon case, I'm hopeful that your client would consider offering a fair compensation, so it will not be necessary to proceed to court and ask for both compensatory and punitive damages, in what I see as a very viable claim on numerous personnel with your client's company.

Again, if I do not hear from your firm by the end of this month, I will deem this as a denial and have no choice but to proceed on to legal remedies.

Thomas R. Hayes

Thomas R. Hayes #053503
Union Correctional Institution
P.O. Box 1000 - A-1102-1
Raiford, Fl. 32083

Pc: enclosures

STATE OF FLORIDA
DEPARTMENT OF CORRECTIONS
CONSULTATION REQUEST/CONSULTANT'S REPORT

TO Institution: GASTRO

FROM Institution: UCI

DATE OF REQUEST: 9/5/13

Reason(s) for consultation:
Evaluate and recommend diagnostic plan ✓
Evaluate and recommend treatment plan ✓
Other (specify):

Follow-up consults require justification

Type of consultation:
Emergency
Urgent
Routine ✓
Follow-up

DATE APPOINTMENT MADE: Scanned 9/30/13
Staff Signature:

APPOINTMENT DATE:

Condition is (check one): ☐ Acute Trauma ☐ Acute Illness ☑ Chronic

History of present illness (include onset, presentation, progress, therapy):
57 years old W/M has been F/U x has HCV⊕ in another institution c/o he suppose to have a liver bx of liver

Physical findings:
abdomen soft, tenderness RUQ, hepatomegaly noted
Sclera non icteric, Skin ∅ Jaundice Ext ∅ edemas good peripheral pulses

Diagnostic findings (explain laboratory, x-ray, or other test findings):
LFT'S W/N/L

Other pertinent information:
BPH, ⊕ HCV c/o pain, Hx of Syphilis, hx K stones, Hx hep B

Provisional diagnosis:
Hep C ⊕ c/o pain on RUQ, last GI 2008

Health Care Provider Signature/Stamp: [signature] 9/5/13 J. AVILES, M.D. UCI AA971861 AV01

CHO/Designee Approval Signature/Stamp: [signature] 9/5/13 J. AVILES, M.D. UCI AA971861 AV01

Denied — monitor liver enzymes

R. LAFONTANT, MD
UNION C.I. [illegible]

AUTHORIZATION FOR SPECIALITY EVALUATION

the undersigned, have had explained to me and understand that I require ______ which cannot be accomplished at ______
also understand that should hospitalization and/or surgery be necessary, a separate consent form will be signed prior to such hospitalization and/or surgery. I therefore consent to be referred to a reception and medical center, or such other health care facility as may be appropriate for the reason(s) stated, and consent to undergo health care services as may be necessary to evaluate my health status.

Signature of Patient: X Date:

Signature of Witness: [signature] Date:

[illegible]

Inmate Name HAYES Thomas

DC# 053503 Race/Sex W/M

Date of Birth 2/ /56

[illegible] amended, revised or altered without approval of the Deputy Assistant Secretary of Health Services Administration

FLORIDA DEPARTMENT OF CORRECTIONS

# CHRONIC ILLNESS CLINIC

Clinics: Respiratory Endocrine (Miscellaneous) Cardiovascular Tuberculosis Immunity Neurology (Gastrointestinal) Oncology

INSTITUTION: UCI DATE: 12/29/14 TIME START: 1140 TIME STOP: 1200

SUBJECTIVE: Chief complaint: I/M states ↑ PND ≈ 5 days @ HS when attempting to sleep - I/M ē lots of questions r/t new Hep C treatment + criteria eligibility (questions addressed ē PE)

Record Review since last CIC visit: (yes) last CIC 09/23/14

Labs (12/09/14):

↑ AST/ALT = 106/142 (09/09/14 AST/ALT = 57/67)

lipids - WNL plt = 309 U/A - WNL

Current Medications & Dosage:
1) Hytrin 1mg qhs
2)
3)
4)
5)
6)
7)
8)
9)
10)

OBJECTIVE: Temp: 96.3 °F Pulse: 77 /min Resp: 16 /min BP: 121/83 Wgt: 173

Gen/Neuro: AAOx3; cooperative
HEENT: (PERRL ē M/R/C/G) Ø JVD Ø lymphadenopathy
Cardio: Ø carotid bruit bilat
Pulm: ⊕ coarse A/P bilat that cleared ē cough
Abd: soft, slightly rounded Ø hepatosplenomegaly normoactive x 4 quads
Musculo: Full ROM / steady gait s̄ assistive devices
Skin: intact Ø discoloration noted @ this time

ASSESSMENT:

1) Hep C ⊕: Asymptomatic

2) BPH: controlled ē above

3) ↑ PND / URI (viral) - I/M instructed to request "sick-call" if symptoms worsen and/or last longer than 2-3 weeks

CHRONIC ILLNESS EDUCATION
✓ DISEASE PROCESS
✓ MEDICATION: COMPLIANCE
INSTRUCTIONS/SIDE EFFECTS
✓ DIET/EXERCISE
✓ TREATMENT COMPLIANCE
✓ SMOKING CESSATION
✓ RISK FACTORS/RESTRICTIONS

PLAN:

Orders signed off: [signature] 12/30/14
T. CONROY, LPN
UNION CI/CORIZON

Medication: rewritten as above

UNION CI
DATE:
ORDERS SIGNED OFF:

Labs: ē next CIC: CMP / CBC / lipids / TSH ē T3 T4 + Free T4

EDUCATION GIVEN:
___ CARDIOVASCULAR ___ TUBERCULOSIS
___ RESPIRATORY ___ IMMUNITY
___ ENDOCRINE ___ NEUROLOGY
___ MISC. ___ GASTROINTESTINAL
___ ONCOLOGY ___ KIDNEY

Consultations (if needed):

Other:

Health Classification Grade reviewed: M2 Follow-up visits: 3-4 Months

SIGNATURE

RTC 4-29-15
Req to lab
Rx replacing

SIGNATURE: [signature] APRN-BC

STAMP: P. SCHNEIDER, ARNP
UNION CI/CORIZON

Inmate Name: Hayes, Thomas
DC#: 053503 Race/Sex: WM
Date of Birth: 2-4-56
Institution: UCI

DC4-701F (Revised 3/8/13)
This form is not to be amended, revised, or altered without approval of the Director of Health Services Administration.

FLORIDA DEPARTMENT OF CORRECTIONS

## CHRONIC ILLNESS CLINIC

**Clinics:** Respiratory Endocrine Miscellaneous Cardiovascular Tuberculosis Immunity Neurology (Gastrointestinal) Oncology

**INSTITUTION:** UCI **DATE:** 4/29/15 **TIME START:** 10:55 **TIME STOP:** 1110

**SUBJECTIVE: Chief complaint:**

Hep C clinic

**Record Review since last CIC visit:**

labs reviewed with pt, requesting treatment for Hep C

**Current Medications & Dosage:**

1) Hytrin 1mg qhs
2)
3)
4)
5)
6)
7)
8)
9)
10)

**OBJECTIVE:** Temp: 97.4 °F Pulse: 86 /min Resp: 16 /min BP: 126/86 Wgt: 174

HEENT – clear
neck – supple no masses
Cardiac – [illegible] RLR
Lungs – clear, no wheezing
Skin – no jaundice

ABD – no [illegible] enlargement of liver – palpable, no rigidity, no guarding, no distention ✓

**ASSESSMENT:**

(1) Hepatitis C
(2) BPH

**CHRONIC ILLNESS EDUCATION**

✓ DISEASE PROCESS
__ MEDICATION: COMPLIANCE
INSTRUCTIONS/SIDE EFFECTS
__ DIET/EXERCISE
__ TREATMENT COMPLIANCE
__ SMOKING CESSATION
__ RISK FACTORS/RESTRICTIONS

(PE done)

**PLAN:** Begin Hep C treatment protocol

**Orders signed off:**

**Medication:**

UNION CI
DATE: 4/30/15 ORDERS SIGNED OFF: 4/30/15
EDUCATION GIVEN:

__ CARDIOVASCULAR __ TUBERCULOSIS
__ RESPIRATORY / IMMUNITY
__ ENDOCRINE __ NEUROLOGY
__ MISC. ✓ GASTROINTESTINAL
__ ONCOLOGY __ KIDNEY

**Labs:** CMP/CBC/LIPIDS/TSH/UA

**Consultations (if needed):** Staff regarding Hep C tx

**Other:** 3 MONTHS

**Health Classification Grade reviewed:** **Follow-up visits:** 1 week

SIGNATURE

**SIGNATURE:** [signature] **STAMP:** Brown, MD 04-29-2015

[signature], LPN
J. IRVIN, LPN
UNION CI/CORIZON

Lab Req sent
Rx ordered
RTC 7/27/15

Hayes, Thomas
DC# 053503
W/M DOB 02/04/56

DC4-701F (Revised 3/8/13)
This form is not to be amended, revised, or altered without approval of the Director of Health Services Administration.

FLORIDA DEPARTMENT OF CORRECTIONS

# CHRONIC ILLNESS CLINIC

Clinics: Respiratory Endocrine Miscellaneous Cardiovascular Tuberculosis Immunity Neurology (Gastrointestinal) Oncology

INSTITUTION: UCI DATE: 7/27/15 TIME START: 1630 TIME STOP: 1645

SUBJECTIVE: Chief complaint: I am doing good but would like to have my hepatitis C treatment

Current Medications & Dosage:
1) Hytrin 1mg qhs
2)
3)
4)
5)
6)
7)
8)
9)
10)

Record Review since last CIC visit:
HCV - 19
Hep C Ab +
Uric Acid 6.3
Fuon 50
120 / 163 / 251 / 480
UA - OK

OBJECTIVE: Temp: 97.3 °F Pulse: 62 /min Resp: 16 /min BP: 109 / 74 Wgt: 172

[handwritten objective notes, largely illegible] ... edema

ASSESSMENT: Hepatitis C
BPH

CHRONIC ILLNESS EDUCATION
✓ DISEASE PROCESS
✓ MEDICATION: COMPLIANCE
✓ INSTRUCTIONS/SIDE EFFECTS
✓ DIET/EXERCISE
✓ TREATMENT COMPLIANCE
✓ SMOKING CESSATION
✓ RISK FACTORS/RESTRICTIONS

PLAN: Fill out Hepatitis C treatment information

Orders signed off:
E. PEREZ - LUGO, MD
UNION CI/CORIZON

Medication: Continue w/ Hytrin

UNION CI
DATE: 7/27/15 ORDERS SIGNED OFF: 7/29/15
EDUCATION GIVEN:
__ CARDIOVASCULAR
__ RESPIRATORY
__ ENDOCRINE
__ MISC.
__ ONCOLOGY
__ TUBERCULOSIS
__ IMMUNITY
__ NEUROLOGY
✓ GASTROINTESTINAL
__ KIDNEY

Labs: Next year

Consultations (if needed): HepC treatment baseline information (done)

Other: Counseled on condition, diet and exercise

Health Classification Grade reviewed: Yes Follow-up visits: 6 months SIGNATURE

SIGNATURE: E. PEREZ - LUGO, MD UNION CI/CORIZON

STAMP: E. PEREZ - LUGO, MD UNION CI/CORIZON

RTC = 1-25-16 = GC - Rx to Pharmacy

J. IRVIN, LPN
UNION CI/CORIZON

Inmate Name: Hayes, Thomas
DC#: 053503 Race/Sex: WM
Date of Birth: 2-4-56
Institution: UCI

DC4-701F (Revised 3/8/13)
This form is not to be amended, revised, or altered without approval of the Director of Health Services Administration.

FLORIDA DEPARTMENT OF CORRECTIONS

# CHRONIC ILLNESS CLINIC

Clinics: Respiratory Endocrine Miscellaneous Cardiovascular Tuberculosis Immunity Neurology (Gastrointestinal) Oncology

INSTITUTION: UCI DATE: 1/25/16 TIME START: [illegible] TIME STOP: [illegible]

SUBJECTIVE: Chief complaint:

Record Review since last CIC visit:

[illegible]

Current Medications & Dosage:

1) Hybrin 1mg qd } ordered 7/27/15 x 1 year
2)
3)
4)
5)
6)
7)
8)
9)
10)

OBJECTIVE: Temp: 98.6 °F Pulse: 60 /min Resp: 18 /min BP: 130/83 Wgt: 165

[illegible handwritten notes] BMI

ASSESSMENT:

[illegible] - well controlled

HCV(+) - req. treatment [illegible]

CHRONIC ILLNESS EDUCATION

- DISEASE PROGESS
- MEDICATION: COMPLIANCE INSTRUCTIONS/SIDE EFFECTS
- DIET/EXERCISE
- TREATMENT COMPLIANCE
- SMOKING CESSATION
- RISK FACTORS/RESTRICTIONS

PLAN: Orders signed off:

Medication: D/C Hytrin

Labs: CBC, [illegible], PSA, TSH [illegible]

Consultations (if needed): [illegible]

Other: [illegible]

Health Classification Grade reviewed: 2 Follow-up visits: 6 mo

UNION CI DATE: 1/26/16 ORDERS SIGNED OFF: [signature]

EDUCATION GIVEN:

- CARDIOVASCULAR
- RESPIRATORY
- ENDOCRINE
- MISC.
- ONCOLOGY
- TUBERCULOSIS
- IMMUNITY
- NEUROLOGY
- GASTROINTESTINAL
- KIDNEY

SIGNATURE

SIGNATURE: [signature]

STAMP: C. CAUDILLA, ARNP UNION CI/CORIZON

RTC 7-25-16 [signature]

Lab to lab

DC Rx to pharm

pass issued

Rx acknowledged in [illegible] 2/1/16

J. HARVEY, LPN UNION CI/CORIZON

Inmate Name Hayes, Thomas
DC# 053503 Race/Sex WM
Date of Birth 8-4-56
Institution UCI

DC4-701F (Revised 3/8/13)

This form is not to be amended, revised, or altered without approval of the Director of Health Services Administration.

BioReference LABORATORIES an OPKO Health Company

FINAL REPORT 

| PHYSICIAN | PATIENT | SAMPLE |
|---|---|---|
| PEREZ, ELLIOT<br>F7317 - UNION CORRECTIONAL INSTITUTION<br>7819 NW 228TH ST,<br>RAIFORD, FL 32026<br>Acct #: (F7317) 00<br>P: (386)431-4166 | HAYES, THOMAS<br>DOB: 02/04/1956 Age: 61 Y Sex: M<br>U/FL: Bed:<br>Rm:<br>Patient ID: 053503<br>Address: 7819 NW 228TH ST, RAIFORD, FL 32026<br>P: | Specimen ID: 942953693<br>Date Of Report: 11/30/2017 13:55<br>Date Collected: 11/28/2017 09:29<br>Date Received: 11/28/2017 23:55<br>North America Eastern Time |

Notes: NON FASTING

# CLINICAL REPORT

## Clinical Abnormalities Summary:

(May not contain all abnormal results; narrative results may not have abnormal flags. Please review entire report.)

DEC 01 2017

| | | | |
|---|---|---|---|
| ALT | 85 HI | | |
| HAPTOGLOBIN | | ALPHA-2-MACROGLOBULIN | 450 HI |

UNION C.I.

| -------* CHEMISTRY *-------- | | | | | | | |
|---|---|---|---|---|---|---|---|
| Bilirubin, Total | 0.6 | | <1.2 | mg/dL | 11/30/17 | 0.8 | 10/03/17 |
| ALT | | 85 HI | <41 | U/L | 11/30/17 | 86 HI | 10/03/17 |
| GGTP | 46 | | 10-71 | U/L | 11/30/17 | 65 | 10/03/17 |
| -* CARDIOVASCULAR/LIPIDS *-- | | | | | | | |
| APOLIPOPROTEIN A1 *NJ1 | 111 | | 104-202 | mg/dL | 11/30/17 | | |
| -* FIBROTEST - ACTITEST® *-- | | | | | | | |
| FIBROSIS SCORE *NJ1 | 0.93 | | | | 11/30/17 | | |
| FIBROSIS STAGE *NJ1 | F4 | | | | 11/30/17 | | |
| FIBROSIS INTERP *NJ1 | severe fibrosis | | | | 11/30/17 | | |
| INFLAMMATION SCORE *NJ1 | 0.72 | | | | 11/30/17 | | |
| INFLAMMATION STAGE *NJ1 | A3 | | | | 11/30/17 | | |
| INFLAMMATION INTERP *NJ1 | severe activity | | | | 11/30/17 | | |

NOTE: Reported values for fibrosis and inflammation are based on methods limits for the HAPTOGLOBIN assay.

FIBROSIS AND NECROINFLAMMATION SCORES AND INTERPRETATIONS

| FibroTest Score | Metavir Score | |
|---|---|---|
| 0.00-0.21 | F0 | no fibrosis |
| 0.22-0.27 | F0-F1 | |
| 0.28-0.31 | F1 | minimal fibrosis |
| 0.32-0.48 | F1-F2 | |
| 0.49-0.58 | F2 | moderate fibrosis |
| 0.59-0.72 | F3 | advanced fibrosis |
| 0.73-0.74 | F3-F4 | |
| 0.75-1.00 | F4 | severe fibrosis |

| ActiTest Score | Metavir Score | |
|---|---|---|
| 0.00-0.17 | A0 | no activity |
| 0.18-0.29 | A0-A1 | |
| 0.30-0.36 | A1 | minimal activity |
| 0.37-0.52 | A1-A2 | |

12/01/17

E. Perez - Lugo MD
Site Medical Director
Union - Centurion



THE TOOMEY LAW FIRM

The Old Robb & Stucky Building
1625 Hendry St., Suite 203, Ft. Myers, Florida 33901
Telephone: 239.337.1630 / Facsimile: 239.337.0307
www.thetoomeylawfirm.com

Reply to: gat@thetoomeylawfirm.com
Direct Line: 239.337.0103
November 27, 2018

Thomas R. Hayes, #053503
Union Correctional Institution
PO Box 1000
Raiford, FL 32083

Re: October 30, 2018 Notice of Intent

Dear Mr. Hayes:

I am in receipt of your recent response to my request that you sign a release for your medical records. You declined and suggested that the case should be settled. That cannot happen without your medical records being in my possession.

Gregg A. Toomey

GAT/hms

Mr. Gregg A. Toomey, Esq.
The Toomey Law Firm
1625 Henry St., Suite 203
Ft. Myers, Fl. 33091

RECIEVED
UNION CORRECTIONAL INSTITUTION
DEC 20 2018
BY: FOR MAILING

RECIEVED
UNION CORRECTIONAL INSTITUTION
DEC 06 2018
BY: FOR MAILING

December 20, 2018

Re: Letter from November 27, 2018

Dear Mr. Toomey,

First, I would like to thank you for your timely response in consideration of the time frame mentioned. I have signed and enclosed the medical release form you requested. However, there could be a few potential pit-falls you are not aware of.

a) Centurion is the current health care provider. I don't know if authorizing Florida Department of Corrections on the form will be sufficient for Centurion personnel to release the requested records;

b) Unless you specify what records, like only (HCV) related. I have over forty years of medical records. As I initially stated in the original letter dated 10-30-2018, I had been diagnosed since 2001;

c) I was under your client's care here at U.C.I., from June of 2013 till they left in the summer of 2016.

You probably will have to call or e-mail the medical records supervisor here and discuss the best way to get what you feel is necessary for your evaluation. I might recommend asking her to scan the records on her computer and then attach those records to an e-mail and forward to your office.

With that said, my medical contentions are legitimate. As you will see, the previous six (6) medical documents were authentic. The postage for all the records that I have would be costly for me. I'm sure you have to do it your way.

Your client and their personnel had a well-established custom and practice of no-proper evaluation and no-treatment policy, contrary to the nationally recognized standard of care. I'm sure you are well aware of the class action case of **Hoffer v. Jones**, out of the Northern District, Tallahassee.

My contention is, your client is not only responsible for the unnecessary pain and suffering I endured for those three years, **with a known cure available** when the disease was progressively getting worse in that three year period. They knew the great

risk involved by not administering treatment. This was a systematic wide custom and practice, affecting over 99.99% of all (HCV) inmates under your client's care. I still suffer this pain periodically, because your client allowed it to progress to this advance stage. (**severe fibrosis, which you already have the lab report**) Your client's utilization management personnel rejected repeated submitted request for treatment by their own hired medical personnel, for non-medical reasons (cost). Without the benefit of an evaluation by a specialist, which they also previously denied.

Because of your client's actions or inactions, I am now at a considerable life-time risk of having liver cancer, (2 to 5) time's greater. I may need a liver transplant in the future! God I hope not. What are the chances an inmate would receive one. Who would foot this bill? Who is responsible for this occurring? These medical issues could easily come about as verified by medical experts in the medical resource material widely available. Not to mention, that the nationally recognized agencies that strongly recommended against deferral of treatment at any stage of fibrosis.

This is a serious medical situation. I sincerely hope that your evaluation will take in all these factors into consideration, when and if your client makes an appropriate settlement offer. I also hope the offer will not minimize the seriousness of this situation and this evaluation, will not be an act of futility. Otherwise, I will have no other recourse but to proceed with the §1983 complaint already prepared to file in federal court in Tallahassee. The F.D.O.C. are also defendants in this suit as their Central Office is located in Tallahassee, for jurisdictional correctness.

In closing as you can see, I specified the time frame on the consent to 1/30/2019.

Sincerely,

Thomas R. Hayes

Thomas R. Hayes#053503
Union Correctional Institution
P.O. Box 1000 – A1102-1
Raiford, Fl. 32083

pc: personal file
Attachments

# FLORIDA DEPARTMENT OF CORRECTIONS
# CONSENT AND AUTHORIZATION FOR USE AND DISCLOSURE INSPECTION AND RELEASE OF CONFIDENTIAL INFORMATION

I, Thomas R. Hayes authorize Florida Department of Corrections
(Name, organization or general designation of program making disclosure)

to disclose to The Toomey Law Firm, 1625 Hendry Street, Suite 203, Fort Myers, FL 33901
(Name of person(s) or organization(s) and address to which disclosure is to be made)

Purpose of disclosure authorized herein: ______

The undersigned hereby authorizes the inspection and release of copies of my medical records indicated below by the above-named health care facility/medical record custodian only to the above-named entity(ies) or persons or their agents. Indicate all of the records authorized to be inspected/released by **initialing** in the appropriate box(es) below:

| INITIAL BELOW FOR RELEASE OF INFORMATION | |
|---|---|
| T.H. | A. Release of all medical records except: any information relating to HIV testing, AIDS and AIDS-related syndromes; psychiatric and psychological information; or alcohol and substance abuse treatment information related to my condition, care, and confinement **(initial box).** |
| T.H. | B. Release of any records regarding HIV testing, AIDS and AIDS-related syndromes relating to my condition, care, and confinement **(initial box).** |
| | C. Release of any records of psychiatric and psychological information (mental health records) other than psychotherapy notes relating to my conditions, care, and confinement **(initial box).** |
| | D. Release of all dental records relating to my condition, care and confinement **(initial box).** |
| | E. Release of any records regarding alcohol and substance abuse treatment relating to my condition, care, and confinement. I understand that my records are protected under the federal regulations governing *Confidentiality of Alcohol and Drug Abuse Patient Records*, 42 C.F.R. Subchapter A, Part 2, and cannot be disclosed without my written consent unless otherwise provided for in the regulations. As to release of alcohol/substance abuse treatment records, please state the specific information to be released as provided by 42 C.F.R., Subchapter A, Part 2 **(initial box):** |

Name of information – dates of treatment/programs, etc., if possible

**NOTE: IF PSYCHOTHERAPY OR SUBSTANCE ABUSE PROGRESS NOTES ARE THE SUBJECT OF THE RELEASE, OTHER RECORDS CANNOT BE THE SUBJECT OF THE SAME AUTHORIZATION. RELEASE OF PSYCHOTHERAPY OR SUBSTANCE ABUSE PROGRESS NOTES IN ADDITION TO THE RECORDS SPECIFIED ABOVE WILL REQUIRE A SEPARATE AUTHORIZATION (SEE BELOW).**

I understand that I may refuse to sign this authorization and my refusal to sign will not affect my access to health care treatment, eligibility for benefits or enrollment, or payment for or coverage of services. I also understand that once my protected health information is disclosed pursuant to this authorization, it may be used and/or redisclosed by the recipient unless the recipient is covered by law which prohibits or limits its use and/or disclosure.

I understand that I may revoke this consent and authorization at any time, provided the revocation is in writing, except to the extent that action has been taken in reliance on it, and that in any event, this consent and authorization shall be effective for 90 days unless I specify a different expiration as follows: - JANUARY 30, 2019
(Specification of the date, event, or condition upon which this consent expires if less than six months or greater than 90 days)

In furtherance of this authorization, I (we) do hereby waive all provisions of law and privileges relating to the disclosures hereby authorized. I acknowledge the extent of my authorization of release as to the records and information denoted in paragraphs A, B, C, D and E by **initialing** the appropriate box(es) above.

Thomas R. Hayes 12-6-18
SIGNATURE OF PATIENT (Guardian or Statutorily Authorized Representative, when required) Date

## AUTHORIZATION FOR RELEASE OF PSYCHOTHERAPHY OR SUBSTANCE ABUSE PROGRESS NOTES

I, ______ authorize ______
(Name, organization or general designation of program making disclosure)

to disclose to ______
(Name of person(s) or organization(s) and address to which disclosure is to be made)

# FLORIDA DEPARTMENT OF CORRECTIONS
## CONSENT AND AUTHORIZATION FOR USE AND DISCLOSURE INSPECTION AND RELEASE OF CONFIDENTIAL INFORMATION

Purpose of disclosure authorized herein: ______________________________

The undersigned hereby authorizes the inspection and release of copies of my psychotherapy progress notes and/or my substance abuse progress notes as indicated below by the above-named health care facility/medical record custodian only to the above-named entity(ies) or persons or their agents. Indicate all of the records authorized to be inspected/released by **initialing** in the appropriate box(es) below:

| INITIAL BELOW FOR RELEASE OF INFORMATION | |
|---|---|
| | A. Release psychotherapy progress notes **(initial box):** |
| | B. Release substance abuse progress notes **(initial box):** |

Name of information -- dates of treatment/programs, etc., if possible

I understand that I may refuse to sign this authorization and my refusal to sign will not affect my access to health care treatment, eligibility for benefits or enrollment, or payment for or coverage of services. I also understand that once my protected health information is disclosed pursuant to this authorization, it may be used and/or redisclosed by the recipient unless the recipient is covered by law which prohibits or limits its use and/or disclosure.

I understand that I may revoke this consent and authorization at any time, provided the revocation is in writing, except to the extent that action has been taken in reliance on it, and that in any event, this consent and authorization shall be effective for 90 days unless I specify a different expiration as follows: ______________________________

(Specification of the date, event, or condition upon which this consent expires if less than six months or greater than 90 days)

In furtherance of this authorization, I (we) do hereby waive all provisions of law and privileges relating to the disclosures hereby authorized. I acknowledge the extent of my authorization of release as to the records and information denoted in paragraphs A and B **initialing** the appropriate box(es) above.

______________________________ ____________

SIGNATURE OF PATIENT (or Next of Kin, Guardian or Authorized Representative, when required) Date

**COMPLETE NOTARY PORTION ONLY WHEN REQUEST IS NOT FROM CURRENT INMATE/OFFENDER PERSONALLY KNOWN TO WITNESS OR IS FROM SOURCE EXTERNAL TO DEPARTMENT**

STATE OF ____________________

COUNTY OF ____________________

Sworn to (or affirmed) and subscribed before me this day of ____________________, 20____, by ______________________________ who is personally known to me or who has produced ____________________ as identification.

______________________________

Notary Public Signature

Print, type, or stamp commissioned name of Notary Public

My Commission Expires: SEAL

## ACKNOWLEDGEMENT OF RECEIPT OF COPY OF SIGNED AUTHORIZATION(S)

**Inmate/Offender Name** Thomas R. Hayes

**DC#** 053503

**R/S** ________

**Date of Birth** 02/04/1956

**SS#** ____________________

**Institution/Office** ____________________

**Witness Name** ____________________

**Witness Signature** ____________________

**Date:** ____________________

STATE OF FLORIDA
DEPARTMENT OF CORRECTIONS

# INMATE REQUEST

Mail Number: ______
Team Number: ______
Institution: ______

TO: (Check One) ☐ Warden ☐ Asst. Warden ☐ Classification ☐ Security ☒ Medical (Ms. Jenkins) ☐ Mental Health ☐ Dental ☐ Other Records Supervisor

| FROM: | Inmate Name | DC Number | Quarters | Job Assignment | Date |
|---|---|---|---|---|---|
| | Hayes, Thomas | 053503 | A1102 | Orderly | 2-4-2019 |

## REQUEST

Check here if this is an informal grievance ☐

As previous mentioned I had forward consent forms to the Toomey law firm to obtain some medical records.

That consent was only good till January 30, 2019. Please advise if they ever exercised that consent form. If not, it now is no longer valid from January 31, 2019 forward.

As you know, Federal law prohibits release of these records without properly dated consent.

All requests will be handled in one of the following ways: 1) Written Information or 2) Personal Interview. All informal grievances will be responded to in writing.

Inmate (Signature): Thomas R. Hayes DC#: 053503

DO NOT WRITE BELOW THIS LINE

## RESPONSE

DATE RECEIVED: RECEIVED FEB 11 2019

BY: RJ

I have made you an apt. please wait on call out for medical records.

As of this date & time I have no request for Records from Toomey ATT. 2/18/19 RJ

Medical Records R. Jenkins Union Centurion Records Supervisor

[The following pertains to informal grievances only:

Based on the above information, your grievance is ______ (Returned, Denied, or Approved). If your informal grievance is denied, you have the right to submit a formal grievance in accordance with Chapter 33-103.006, F.A.C.]

Official (Print Name): RJ Official (Signature): R. Jenkins Medical Records Supervisor Union Centurion Date: 2/11/19

Original: Inmate (plus one copy)
CC: Retained by official responding or if the response is to an informal grievance then forward to be placed in inmate's file
This form is also used to file informal grievances in accordance with Rule 33-103.005, Florida Administrative Code.

Informal Grievances and Inmate Requests will be responded to within 15 days, following receipt by staff.
You may obtain further administrative review of your complaint by obtaining form DC1-303, Request for Administrative Remedy or Appeal, completing the form as required by Rule 33-103.006, F.A.C., attaching a copy of your informal grievance and response, and forwarding your complaint to the warden or assistant warden no later than 15 days after the grievance is responded to. If the 15th day falls on a weekend or holiday, the due date shall be the next regular work day.

DC6-236 (Effective 11/18)

Incorporated by Reference in Rule 33-103.005, F.A.C.

Thomas K. Hayes #053503
Union Correctional Institution
P.O. Box 1000
Raiford, Fl. 32083

Mailed from a State
Correctional Institution

US POSTAGE
ZIP 32083 $
02 1W
0001403805

CHECKED FEB 7 2020

Clerk of Court
U.S. District Court
111 North Adams St, Suite 322
Tallahassee, Fl. 32301-7714

LEGAL MAIL