UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

THOMAS RAY HAYES,
     Plaintiff,

vs.                        Case No.: 4:19cv97/MW/EMT

CORIZON HEALTH, INC., et al.,
     Defendants.
_____/

## <u>REPORT AND RECOMMENDATION</u>

This matter is before the court on motions to dismiss filed by Defendants Corizon Health, Inc. (Corizon) (ECF No. 116) and Centurion of Florida (Centurion) (ECF No. 119). Plaintiff Thomas Ray Hayes (Hayes) filed a response in opposition to each motion to dismiss (ECF Nos. 123, 133). Corizon filed a reply (ECF No. 127), and Hayes filed a sur-reply (ECF No. 143).

The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2(C); *see also* 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b). Upon consideration of the submissions, the parties' arguments, and the relevant law, the undersigned concludes that Defendants' motions to dismiss should be denied. Additionally, it is apparent that transfer of this case to the Middle District of Florida is appropriate.

I.     BACKGROUND

Hayes was housed at Union Correctional Institution when he commenced this case, and he is still housed there.   The events underlying the claims asserted in Hayes' Amended Complaint, which is the operative pleading, occurred while Hayes was housed at Union C.I. (Hayes alleges he has been housed at Union C.I. since June of 2013) (Amended Complaint, ECF No. 102 at 7–19).[1]   Union C.I. is located in Union County, Florida, which is in the Middle District of Florida.

In the Amended Complaint, Hayes asserts Eighth Amendment claims of deliberate indifference against Corizon and Centurion for their alleged failure to treat his Hepatitis C virus (HCV) (Amended Complaint, ECF No. 102 at 20, 21).[2]   As relief, Hayes seeks compensatory and punitive damages (*id.* at 21–22).   Hayes attached several exhibits to both his initial Complaint and his Amended Complaint, notably, copies of administrative grievances (*see* ECF No. 1 at 32–43; ECF No. 102 at 25–29).   Corizon and Centurion filed motions to dismiss the Amended Complaint for failure to exhaust administrative remedies and failure to state a claim upon which

---

[1]   When the page number assigned by the court's electronic case filing system (ECF) conflicts with the page number of the original document, the court refers to the ECF page number.

[2]   The Amended Complaint also asserts a deliberate indifference claim against former FDOC Secretary Julie Jones, but this claim was dismissed pursuant to the parties' settlement (*see* ECF Nos. 145, 148).

relief may be granted (ECF Nos. 116, 119).  In Hayes' responses, he argues he exhausted his administrative remedies, and that the factual allegations of the Amended Complaint state a plausible claim for relief against Corizon and Centurion (*see* ECF Nos. 123, 133, 143).

## II.    EXHAUSTION

Under the Prison Litigation Reform Act (PLRA), "[n]o action shall be brought with respect to prison conditions under section 1983 until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  "[W]hen a state provides a grievance procedure for its prisoners, . . . an inmate alleging harm suffered from prison conditions must file a grievance and exhaust the remedies available under that procedure before pursuing a § 1983 lawsuit."  *Bryant v. Rich*, 530 F.3d 1368, 1372–73 (11th Cir. 2008) (internal quotation marks and citation omitted). Exhaustion of administrative remedies serves two main purposes:  first, it protects administrative agency authority, in that it gives an agency an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court, and it discourages disregard of the agency's procedures; and, second, it promotes efficiency, in that claims generally can be resolved much more quickly

and economically in proceedings before an agency than in litigation in federal court. *Woodford v. Ngo*, 548 U.S. 81, 88–89, 126 S. Ct. 2378, 165 L. Ed. 2d 368 (2006).

"[A] defense of failure to properly exhaust available administrative remedies under the PLRA should be treated as a matter in abatement." *Turner v. Burnside*, 541 F.3d 1077, 1082 (11th Cir. 2008). "As a result, deciding a motion to dismiss for failure to exhaust administrative remedies is a two-step process." *Id.* "First, the court looks to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's version of the facts as true. If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed." *Id.*

Second, "[i]f the complaint is not subject to dismissal at the first step, where the plaintiff's allegations are assumed to be true, the court then proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion." *Turner*, 541 F.3d at 1082 (citation omitted). "The defendants bear the burden of proving that the plaintiff has failed to exhaust his available administrative remedies." *Id.* (citations omitted). "Once the court makes findings on the disputed issues of fact, it then decides whether under those findings the prisoner has exhausted his available administrative remedies." *Id.* at 1083.

Grievance procedures for grievances "of a medical nature" within the Florida Department of Corrections (FDOC) are set out in a standard operating procedure. *See Glenn v. Smith*, 706 F. App'x 561, 562–63 (11th Cir. 2017) (describing the relevant standard operating procedure for grievances "of a medical nature" and citing provisions of the Florida Administrative Code). The procedure has a two-part process. *Id.* (citing Fla. Admin. Code r. 33-103.008; rr. 33-103.006, 33-103.007). A prisoner claiming deficient medical care may, within 15 days from "[t]he date on which the incident or action being grieved occurred," submit a formal grievance to his prison. *Id.* (citing Fla. Admin. Code r. 33-103.011(1)(b)). If the prison denies the grievance, the prisoner may appeal the denial to the Office of the Secretary. *See id.* (citing Fla. Admin. Code rr. 33-103.007, 33-103.008).

Here, the record demonstrates that on March 26, 2018, Hayes submitted a formal grievance stating he had been diagnosed with HCV in 2002 (Amended Complaint, ECF No. 102 at 26 (partial copy of grievance); Complaint, ECF No. 1 at 32 (complete copy of grievance)). Hayes stated that although he started receiving treatment on March 9, 2018, in the form of direct-acting antivirals (DAAs), and although DAAs had a high success rate, the treatment did not undo the damage caused by progression of the disease from lack of treatment prior to that date (*id.*).

Hayes complained that due to the policies and practices of the FDOC and its contracted medical providers, he was not timely treated with DAAs despite their availability four years prior (*id.*).   Hayes stated that if he had been treated, the disease would not have progressed to "cirrhosis" (*id.*).   In his formal grievance, Hayes requested monetary damages or immediate release from prison to compensate him for the shortening of his life span and diminishment of his quality of life (*id.*).

On April 5, 2018, the Chief Health Officer, E. Perez, responded to Hayes' grievance as follows:

> Your request for Administrative Remedy or Appeal has been reviewed and evaluated.
>
> Reviewed records indicate that you currently being [sic] followed by the clinician in Clinic for this issue.   There is no indication that you have been denied medical care or access to medical.   Should you have questions or concerns about your current treatment plan, Sick-Call is available so that you may present your concerns to your current health care team.
>
> Based on the above information, your grievance is denied.

(Amended Complaint, ECF No. 102 at 25).

Hayes appealed the denial to the Secretary's Office (Amended Complaint, ECF No. 102 at 27 (partial copy of appeal); Complaint, ECF No. 1 at 34 (complete copy of appeal)).   His appeal was received on April 19, 2018 (*id.*).   Hayes asserted

that DAAs had been available for use since mid-2013 and were proven to be highly

effective in treating HCV (*id.*).   Hayes complained that the failure to treat him with

DAAs caused his HCV to progress to "severe fibrosis" (*id.*).

On June 5, 2018, the Secretary's Office provided the following response:

> Your administrative appeal has been received in our office and is still under investigation.   As soon as our investigation is complete, you will receive an answer.   Appeal #18-6-16849 was forwarded to Health Services in Central Office for their review and/or response.
>
> 1) The grievance procedure or the appeals office is not to be used for correspondence purposes. 2) The act of asking questions or seeking information, guidance or assistance is not considered to be a grievance. 3) You cannot use the grievance procedure to complain about issues not under the control of the Department.   Refer to Chapter 33-103.001.

(Amended Complaint, ECF No. 102 at 28).

On July 16, 2018, representatives of the Secretary's Office supplemented this

response with the following:

> Appeal Denied:
>
> Your request for administrative remedy was received at this office and it was carefully evaluated.   Records available to this office were also reviewed.
>
> It is the responsibility of your health care staff to determine the appropriate treatment regimen for the condition you are experiencing.
>
> It is determined that the response made to you by Dr. Perez on 4/5/2018 appropriately addresses the issues you presented.

> Records provided to this office reveal that you are currently being treated for the medical concern you are grieving.  Please be advised that you cannot use the grievance process for monetary gain and/or tort claims.
>
> Should you experience problems, sick call is available so that you may present your concerns to your health care staff.

(Amended Complaint, ECF No. 102 at 29).

Hayes filed another formal grievance on December 9, 2018, which was received the next day (Complaint, ECF No. 1 at 37–38).   Hayes alleged he completed treatment on May 31, 2018, and was told by medical staff that the HCV was undetectable; but he complained that the failure to treat him sooner caused the disease to progress to "severe fibrosis" (*id.*).   Hayes alleged he complained to the medical staff about blood in his urine and sharp pains, cramping, and discomfort in his liver area (*id.*).   Hayes alleged the medical staff responded that because the HCV was undetectable he would not be seen by a specialist (*id.*).   In his grievance, Hayes requested additional "follow-up" and monitoring (*id.*).

On December 21, 2018, Dr. C. Balbuena, the Chief Health Officer, responded to Hayes' grievance as follows:

> Your request for Administrative Remedy or Appeal has been received, reviewed and evaluated.

Reviewed records indicate that your chronic condition is being followed with regular chronic clinics, as well as routine lab work and imaging as clinically indicated. You have the option to access Sick-Call should you have further concerns.

You are being treated in accordance with FDC policy and procedure.

Based on the above information, your grievance is denied.

(Complaint, ECF No. 1 at 39).

Hayes filed an appeal to the Secretary's Office, which was received on January 2, 2019 (Complaint, ECF No. 1 at 40–41). Hayes acknowledged that an ultrasound and blood work showed that the virus was currently undetectable, but he complained that he still needed an evaluation by a specialist for the "severe fibrosis" which was detected prior to his receiving treatment (*id.*).

On January 28, 2019, representatives of the Secretary's Office responded as follows:

Appeal Denied:

Your request for administrative remedy was received at this office and it was carefully evaluated. Records available to this office were also reviewed.

It is the responsibility of your health care staff to determine the appropriate treatment regimen for the condition you are experiencing.

It is determined that the response made to you by Dr. Balbuena on 12/21/2018 appropriately addresses the issues you presented.

> Records reviewed indicate that to date, you have not accessed sick call to have your medical concerns evaluated.
>
> Please be advised that an inmate does not have the right to dictate staff duties.
>
> Should you experience problems, sick call is available so that you may present your concerns to your health care staff.

(Amended Complaint, ECF No. 102 at 43).

Hayes commenced this civil rights lawsuit on February 14, 2019, two weeks after the Secretary's response (Complaint, ECF No. 1).

## A.    Corizon's Motion to Dismiss

Corizon contends Hayes never grieved his claim against Corizon, because his grievance did not seek medical care and instead sought only monetary damages (Corizon's Motion to Dismiss, ECF No. 116 at 6).   Corizon argues:

> Hayes acknowledges that he did not seek treatment in the grievance and his claim concerns the lack of treatment leading to a worsened medical condition [ECF #123, p. 10].   That is exactly the point:  he did not grieve the issue upon which he sues.   The grievance cannot be read to include Corizon's alleged lack of treatment and it is clear the Florida Department of Corrections did not interpret the grievance to include the long-ago lack of treatment because that was not what Hayes sought in the grievance.   What he sought was settlement.

(Corizon's Reply, ECF No. 127 at 2).

Case No.:   4:19cv97/MW/EMT

Corizon's argument is unconvincing.   Hayes' grievances demonstrate that he grieved the same issue upon which he now sues.   In his March 26, 2018 grievance, Hayes acknowledged he had just started receiving HCV treatment earlier that month, and he complained that he should have been receiving it during the four years prior to that.   Hayes complained that treatment for his HCV was available during that period, but the policies and practices of the FDOC and its contracted medical providers (one of which was Corizon) prevented him from receiving it.   Hayes complained that if he had been treated, the disease would not have progressed to "cirrhosis" (as alleged in Hayes' formal grievance) or "severe fibrosis" (as alleged in his appeal to the Secretary's Office).   This lack of available, additional treatment is exactly what Hayes is suing about in this civil rights action (*see* Amended Complaint, ECF No. 102 at 7–22).   Even if Hayes could not "use the grievance process for monetary gain and/or tort claims," as he was told by the Secretary's Office, the PLRA requires exhaustion regardless of the relief sought by the plaintiff. *See Booth v. Churner*, 532 U.S. 731, 741 & n.6 (2001) (holding that "Congress has provided in § 1997e(a) that an inmate must exhaust irrespective of the forms of relief sought and offered through administrative avenues.").

Corizon also argues Hayes' grievances were untimely (Corizon's Motion to Dismiss, ECF No. 116 at 6; Reply, ECF No. 127 at 1–2). Corizon contends the FDOC's grievance procedure requires grievances to be filed within 30 days of the occurrence giving rise to the grievance, but Hayes waited until March of 2018, nearly two years after Corizon stopped providing medical care in FDOC prisons, to file his grievance (*id.*).

Corizon's timeliness argument fails. Hayes alleges that the first time he was ever informed of the actual stage of severity of his HCV was on March 5, 2018, during an appointment with his treating physician (Amended Complaint, ECF No. 102 at 18). He filed his grievance within thirty days of that date, on March 26, 2018. Furthermore, neither the institution nor the Secretary's Office denied the grievances on timeliness grounds. Because the procedural rules regarding time limits were not affirmatively invoked at the administrative level, timeliness may not be asserted in support of an exhaustion defense. *See Whatley v. Smith*, 898 F.3d 1072, 1086 (11th Cir. 2018).

## B.    Centurion's Motion to Dismiss

Centurion contends Hayes' grievance of March 26, 2018, was the only formal grievance attached to Hayes' Amended Complaint (Centurion's Motion to Dismiss,

ECF No. 119 at 6).   Centurion contends this grievance was inadequate to comply with the administrative grievance process, because Hayes "did not properly grieve against Centurion" or seek a remedy which could be addressed through the grievance process (*id.* at 6–7).   Centurion contends Hayes did not grieve any issue against Centurion, because Hayes referenced the "failure to timely treat" his HCV "four years ago," but Centurion was not the contracted medical provider four years prior (in 2014) (ECF No. 119 at 7).   Centurion acknowledges that Hayes presented allegations against it in his appeal to the Secretary Office, but Centurion asserts Hayes' doing so was "improper" (*id.* n.2).   Centurion also argues Hayes filed the grievance on March 26, 2018, several weeks after he began HCV treatment, and instead of seeking medical care or resolution of any medical issue, he sought monetary damages or release (*id.* at 6–7).

As discussed *supra*, Hayes' seeking a remedy that was not available via the administrative grievance process does not render his claim unexhausted. Additionally, Hayes' failure to specifically mention Centurion in his formal grievance does not render his claims against Centurion unexhausted.   The crux of Hayes' formal grievance was that the FDOC and its contracted medical providers delayed available treatment until March of 2018 purely because of cost, and the

delay caused the disease to progress to the point of injury, i.e., "severe fibrosis."   As previously discussed, that is the basis of the Eighth Amendment claims Hayes presents against Centurion and Corizon in this lawsuit.   Hayes satisfied the exhaustion requirement.

## III.    FAILURE TO STATE A CLAIM

A motion pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure seeks dismissal of the complaint for failure to state a claim on which relief can be granted.   While Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," it "demands more than an unadorned, the defendant-unlawfully-harmed-me accusation."   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).   "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do."   *Id.*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).   "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"   *Id.* (quoting *Twombly*, 550 U.S. at 557).   "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state

a claim to relief that is plausible on its face.'"    *Id.* (quoting *Twombly*, 550 U.S. at 570).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."    *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). This "plausibility standard" requires a showing of "more than a sheer possibility" that the defendant is liable on the claim.    *Id.* (citing *Twombly*, 550 U.S. at 556). The allegations of the complaint must set forth enough facts "to raise a right to relief above the speculative level."    *Twombly*, 550 U.S. at 555.    In other words, the complaint must contain sufficient factual matter, accepted as true, to permit a court "to draw the reasonable inference that the defendant is liable for the misconduct alleged."    *Iqbal*, 556 U.S. at 678.

When considering a motion to dismiss, "the court limits its consideration to the pleadings and exhibits attached thereto" and incorporated into the complaint by reference.    *See Thaeter v. Palm Beach Cty. Sheriff's Office*, 449 F.3d 1342, 1352 n.7 (11th Cir. 2006) (internal quotation marks and citation omitted).    The court also accepts all factual allegations of the complaint as true and construes them in the light

most favorable to the plaintiff.  *See Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008).

To prevail on an Eighth Amendment deprivation of medical care claim, a prisoner must prove three elements.  First, there must be, objectively speaking, conduct by public officials "sufficiently serious" to constitute a cruel or unusual deprivation—one "denying the minimal civilized measure of life's necessities." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991) (internal quotation marks and citation omitted).  To show an objectively serious deprivation, it is necessary to demonstrate, first, an objectively "serious medical need[ ]," *Estelle v. Gamble*, 429 U.S. 97, 104 (1976), one that, if left unattended, "pos[es] a substantial risk of serious harm," *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."  *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003).

Second, it is necessary to demonstrate that the response made by the public official to that need was poor enough to constitute "an unnecessary and wanton infliction of pain," and not merely accidental inadequacy, "negligen[ce] in diagnosi[s] or treat[ment]," or even "[m]edical malpractice" actionable under state

law.  *Estelle*, 429 U.S. at 105–06.   Similarly, to show the required subjective intent

to punish, a plaintiff must demonstrate that the public official acted with an attitude

of "deliberate indifference," *id.* at 105, which is in turn defined as requiring two

separate things:  "aware[ness] of facts from which the inference could be drawn that

a substantial risk of serious harm exists and . . . draw[ing of] the inference," *Farmer*,

511 U.S. at 837.   Delay in providing "medical treatment known to be necessary"

may qualify as deliberate indifference.  *H.C. ex rel. Hewett v. Jarrard*, 786 F.2d

1080, 1086 (11th Cir. 1986); *see also Ancata v. Prison Health Servs., Inc.*, 769 F.2d

700, 704 (11th Cir. 1985) ("[I]f necessary medical treatment has been delayed for

non-medical reasons, a case of deliberate indifference has been made out.").

In order to satisfy the final element of an Eighth Amendment claim for

deprivation of medical care, a plaintiff must show that the defendant's deliberate

indifference caused his injury.  *Taylor v. Adams*, 221 F.3d 1254, 1258 (11th Cir.

2000).

A municipality or other governmental entity may be held liable under § 1983

where that municipality's policies or customs cause a constitutional violation.

*Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658 (1978); *City of Canton,

Ohio v. Harris*, 489 U.S. 378, 385 (1989); *McDowell v. Brown*, 392 F.3d 1283, 1289

(11th Cir. 2004).   There must be "a direct causal link between a municipal policy or custom and the alleged constitutional deprivation."   *Harris*, 489 U.S. at 385. Where, as here, a private entity contracts with a State or municipality to provide medical services to inmates, it becomes the functional equivalent of the State under section 1983.   *See West v. Atkins*, 487 U.S. 42, 54–57 (1988); *Craig v. Floyd Cty., Ga.*, 643 F.3d 1306, 1310 (11th Cir. 2011) (internal quotation marks and citation omitted); *Ancata*, 769 F.2d at 703; *Buckner v. Toro*, 116 F.3d 450, 452 (11th Cir. 1997).   The plaintiff must prove that the agents of the private medical provider violated his constitutional rights, and its policy or custom was the "moving force behind" the deprivation.   *See Craig*, 643 F.3d at 1310.

## A.    Corizon's Motion to Dismiss

In the introductory or "Motion" section of Corizon's motion to dismiss, Corizon asserts Hayes' claims should be dismissed for failure to state a claim (Corizon's Motion to Dismiss, ECF No. 116 at 1–2).   Corizon then sets out the applicable legal standard for dismissals under Rule 12(b)(6) (*id.* at 2–3).   But, as Hayes points out (*see* Hayes' Response, ECF No. 123 at 3), Corizon's motion stops there.   Corizon makes no argument as to why the factual allegations of Hayes'

Amended Complaint fail to state a plausible Eighth Amendment claim under the Rule 12(b)(6) standard (*see* Corizon's Motion to Dismiss, ECF No. 116 at 2–3).

The burden rests on the parties to present arguments to the court, and issues not substantively and meaningfully argued are waived. *See Old West Annuity & Life Ins. Co. v. Apollo Group*, 605 F.3d 856, 860 n.1 (11th Cir. 2010) (finding waiver when a party "has not presented substantive argument"); *U.S. Steel Corp. v. Astrue*, 495 F.3d 1272, 1287 n.13 (11th Cir. 2007) (refusing to address a party's "perfunctory and underdeveloped argument") (citation omitted); *see also Lyes v. City of Riviera Beach*, 126 F.3d 1380, 1388 (11th Cir. 1997) (explaining that "the onus is upon the parties to formulate arguments"); *see also, e.g., Herbert v. Architect of Capitol*, 839 F. Supp. 2d 284, 298 (D.D.C. 2012) ("[T]he [defendant] has simply failed to support its argument with any meaningful measure of factual or legal argument. Courts need not consider cursory arguments of this kind, and the Court declines to do so here.").

Here, Corizon fails to include any meaningful factual or legal argument on the issue of whether Hayes' Amended Complaint states a plausible claim for relief. Therefore, Corizon has not convinced the court that Hayes' allegations are subject to dismissal at this stage.

Moreover, taking the factual allegations of Hayes' Amended Complaint as true, the Amended Complaint pleads a plausible Eighth Amendment violation against Corizon.   Hayes' Amended Complaint alleges he was diagnosed with HCV in 2001 and monitored with semiannual blood tests (Amended Complaint, ECF No. 102 at 7).   Hayes alleges in October of 2012, Corizon became the contracted medical provider for FDOC inmates at Union C.I. (*id.* at 8).   Hayes alleges in late 2013, direct-acting antivirals (DAAs) were approved by the FDA and released on the market in 2014 (*id.* at 9).   Hayes alleges he was not treated with DAAs until March of 2018, and by that time, the HCV had progressed to "an advance [sic] stage of liver damage" and "severe fibrosis" (*id.* at 8, 11–12).   Hayes alleges in April, June, and July of 2015, and in January and February of 2016, his medical providers (Corizon employees) requested that Hayes receive treatment beyond blood tests, but the requests were rejected due to Corizon's custom and/or policy of cost containment (*id.* at 8–12, 20).   Hayes alleges the first time he was ever informed of the actual severity of his HCV (i.e., that it had progressed to "severe fibrosis") was on March 5, 2018, during an appointment with his treating physician (*id.* at 18).   Hayes alleges Corizon's refusal to authorize available treatment caused "irreversible liver damage"

and subjected him to "a life-time of monitoring his liver for potential future liver cancer and other liver related issues" (*id.* at 20).

Hayes' factual allegations plausibly suggest that Corizon's custom or policy of cost-containment—a non-medical justification—caused him to be deprived of available treatment for his HCV for at least a year prior to the date the Corizon turned the reins over to Centurion.   Further, Hayes' allegations plausibly suggest a causal connection between Corizon's custom or policy and Hayes' "severe fibrosis." Hayes' allegations state a plausible Eighth Amendment claim against Corizon.

### B.    Centurion's Motion to Dismiss

Centurion argues that Hayes asserts only a conclusory legal conclusion that Centurion acted with deliberate indifference to his serious medical need (Centurion's Motion to Dismiss, ECF No. 119 at 9).   Centurion argues Hayes fails to adequately identify injuries suffered as a result of Centurion's purported shortcomings; that he fails to specifically identify or plead damages suffered because of Centurion's alleged actions; and that he fails to establish a causal connection between any custom and policy of Centurion and any injuries or damages suffered (*id.* at 9–10).

Hayes' Amended Complaint alleges Centurion became the contracted medical services contractor for FDOC institutions in 2016 (Amended Complaint, ECF No.

102 at 16).    Hayes alleges in October of 2016, he met with his treating physician at Union C.I. (who by then had transitioned from Corizon to Centurion) and learned that a blood test showed abnormally high "ALTs" and "ASTs" (*id.* at 17–18). Hayes alleges his physician told him, "[M]y hands are tied, they (Centurion) will not allow me to recommend any further action be taken." (*id.* at 18).    Hayes alleges one year later, in November of 2017, his lab report indicated "severe fibrosis" (*id.*). Hayes alleges his treating physician informed him of this report on March 5, 2018, and Hayes began treatment on March 9, 2018 (*id.*).    Hayes alleges he did not receive necessary treatment sooner due to Centurion's custom and/or policy of cost containment (*id.* at 16–19, 21).    Hayes alleges Centurion's failure to provide adequate treatment led to "continued pain, suffering and subjected Plaintiff to a life-time of monitoring his liver for potential liver cancer in the future, due to the extensive/irreversible damage to Plaintiff's liver." (*id.* at 21).

Hayes' factual allegations plausibly suggest that Centurion's custom or policy of cost-containment caused him to be deprived of available treatment for his HCV from 2016 to March of 2018, and that the deprivation caused "extensive/irreversible" liver damages.    *See Mitchell v. Nobles*, 873 F.3d 869, 871, 876 (11th Cir. 2017) (reversing district court's grant of prison medical officials' motion to dismiss and

holding that prisoner plaintiff's allegations, that he informed the prison medical staff of HCV diagnosis, but they failed to provide him "medication and/or treatment," including a "breakthrough" hepatitis C medication, and that "CIRRHOSIS has begun," stated a claim for deliberate indifference).   Further, Hayes' allegations concerning harm caused by Centurion's alleged custom or policy are sufficient to survive a motion to dismiss.  *See Erickson v. Pardus*, 551 U.S. 89, 91–93 (2007) (reversing grant of prison medical officials' motion to dismiss and holding that prisoner plaintiff's allegations, that prison medical officials "removed [him] from [his] hepatitis C treatment" in violation of Department protocol "thus endangering [his] life," and that he was suffering from "continued damage to [his] liver" as a result of the nontreatment, sufficiently alleged that defendants' actions had caused plaintiff cognizable harm).   Hayes' allegations state a plausible Eighth Amendment claim against Centurion.

## IV.    VENUE

Although this case has been pending for nineteen months, the undersigned was assigned to it less than five months ago (*see* ECF Nos. 114, 115).   Until now, none of the parties' filings required the undersigned's review of the parties' pleadings.   Having now carefully reviewed the allegations and claims of the

Amended Complaint, it is apparent that the proper venue for this action is the Middle

District of Florida.

The general venue statute provides, in relevant part:

**(b) Venue in general.**—A civil action may be brought in—

**(1)** a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;

**(2)** a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or

**(3)** if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

**(c) Residency.**—For all venue purposes—
. . . .
**(2)** an entity with the capacity to sue and be sued in its common name under applicable law, whether or not incorporated, shall be deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question . . . .

**(d) Residency of corporations in States with multiple districts.**— For purposes of venue under this chapter, in a State which has more than one judicial district and in which a defendant that is a corporation is subject to personal jurisdiction at the time an action is commenced, such corporation shall be deemed to reside in any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate State, and, if there is no such

district, the corporation shall be deemed to reside in the district within which it has the most significant contacts.

28 U.S.C. § 1391(b)–(d).

For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.   28 U.S.C. § 1404(a); *see generally Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (holding that the purpose of Section 1404(a) is "to prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense") (citations omitted); *Brown v. Conn. Gen. Life Ins. Co.*, 934 F.2d 1193, 1197 (11th Cir. 1991).   The decision to transfer an action pursuant to § 1404(a) is left to the "sound discretion of the district court and [is] reviewable only for an abuse of that discretion."   *Roofing & Sheeting Metal Servs. v. La Quinta Motor Inns*, 689 F.2d 982, 985 (11th Cir. 1982).   Such transfers may be made sua sponte by the district court.   *See Mills v. Beech Aircraft Corp.*, 886 F.2d 758, 761 (5th Cir. 1989); *Robinson v. Madison*, 752 F. Supp. 842, 846 (N.D. Ill. 1990) ("A court's authority to transfer cases under § 1404(a) does not depend upon the motion, stipulation or consent of the parties to the litigation."); *Empire Gas Corp. v. True Value Gas of Fla., Inc.*, 702 F. Supp. 783,

784 (W.D. Mo. 1989) (a court may consider transferring a case for the convenience of the parties on its own motion).

The question of whether to transfer venue involves a two-pronged inquiry. First, the alternative venue must be one in which the action could originally have been brought by the plaintiff. 28 U.S.C. § 1404(a). Thus as an initial matter this court must consider whether the instant action might have been brought in the United States District Court for the Middle District of Florida. If the plaintiff would have had a right to bring suit in the proposed transferee district at the commencement of the action, "independently of the wishes of [the] defendant," then the transferee district is a district where the action "might have been brought." *Hoffman v. Blaski*, 363 U.S. 335, 344 (1960). Accordingly, venue, personal jurisdiction, and subject matter jurisdiction must all have been proper in the proposed transferee district. *Id.* at 343–44.

In this case, it is evident that this action could have originally been brought in the Middle District of Florida, where the events giving rise to Plaintiff's Eighth Amendment claims took place. Further, based on the allegations of the Amended Complaint, the Middle District of Florida should be able to exercise personal jurisdiction over the remaining Defendants (Corizon and Centurion), either as

residents or as non-residents under Florida's long-arm statute, in the same way this court would as to either or both entities.   As to the issue of whether subject matter jurisdiction would lie in the proposed transferee district, it is readily apparent from the Amended Complaint that it would.

The second prong of the venue inquiry requires an element-by-element balancing of private and public factors. *Mason v. Smithkline Beecham Clinical Labs.*, 146 F. Supp. 2d 1355, 1359 (S.D. Fla. 2001); *Miot v. Kechijian*, 830 F. Supp. 1460, 1465–66 (S.D. Fla. 1993).   Factors which may be considered in determining whether transfer is appropriate include:   the convenience of witnesses; the location of relevant documentary evidence and the relative ease of access to sources of proof; the convenience of the parties; the locus of operative facts; the availability of process to compel the attendance of unwilling witnesses; the relative financial means of the parties; a forum's familiarity with the governing law; the weight accorded a plaintiff's choice of forum; and trial efficiency and the interest of justice, based on a totality of the circumstances.  *See Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 n.1 (11th Cir. 2005); *see also Thermal Techs., Inc. v. Dade Serv. Corp.*, 282 F. Supp. 2d 1373, 1376 (S.D. Fla. 2003) (citing *Van Dusen*, 376 U.S. at 616); *see also,*

*e.g., Baker v. Major League Baseball Props., Inc.*, No. 3:08cv114/MCR, 2009 WL 1098482, at *2 (N.D. Fla. Apr. 22, 2009).

### A.      Convenience of the Witnesses

This factor may be "the single most important factor in the analysis whether a transfer should be granted."   *Elec. Transaction Network v. Katz*, 734 F. Supp. 492, 501–02 (N.D. Ga. 1989).   In this case, Hayes' allegations suggest that his witnesses (i.e., himself and the physicians who treated him at Union C.I. since his arrival there in June of 2013) reside in the Middle District of Florida.   These physicians will likely testify regarding Hayes' condition and their employers' policies regarding treatment of inmates suffering from HCV.   If Corizon and Centurion have other witnesses who would testify regarding their respective policies, it is not clear where those witnesses reside.   Hayes alleges Centurion's headquarters is in Ocala, Florida, which is in the Middle District.   Hayes alleges Corizon's headquarters is in Missouri, which is obviously not in either the Middle or Northern District of Florida. It appears it may be more convenient for the witnesses to litigate this case in the Middle District of Florida as opposed to the Northern District.   Therefore, this factor weighs in favor of transfer.

**B.    Location of Relevant Documents and Relative Ease of Access to Sources of Proof**

The relevant documents are Hayes' medical records and the policies governing Defendants' provision of medical services to inmates at FDOC institutions, including Union C.I.   The majority of these documents and other sources of proof are likely at Union C.I. in the Middle District, where the medical treatment at issue was, or was not, provided.[3]   This factor therefore favors transfer.

**C.    Convenience of the Parties**

The parties are Hayes, Corizon, and Centurion.   Although Hayes appears to favor the instant forum (the court assumes such, since he filed here), he is housed at Union C.I. in the Middle District.   Further, as previously noted, it appears that Centurion is headquartered in Ocala, Florida (which is in the Middle District of Florida) and Corizon is headquartered in St. Louis, Missouri (*see* Amended Complaint, ECF No. 102 at 2).   Counsel for Corizon and Centurion are officed in the Middle District (Corizon's counsel is officed in Fort Myers, and Centurion's

---

[3] To the extent written sources of proof are not physically located in the Middle District—for example, policies and procedures—Defendants can likely obtain these sources of proof via electronic means, and Hayes can obtain them through discovery.   Thus, this factor is, at the least, neutral, but it more likely weighs in favor of transfer because the treatment providers themselves are "sources of proof," as is Hayes, and as previously noted they are located in the Middle District.

counsel are officed in Tampa).   Taking into consideration the convenience of all

parties, the court concludes that this factor weighs in favor of transfer.[4]

## D.   Locus of Operative Facts

"The location of operative facts underlying a claim is a key factor in

determining a motion to transfer venue."   *Harvard v. Inch*, 408 F. Supp. 3d 1255,

1262 (N.D. Fla. 2019) (internal quotation marks and citation omitted).   "In

determining the locus of operative facts, the court must look at the site of the events

from which the claim arises." *Id.* (internal quotation marks and citation omitted).

This factor strongly favors transfer to the Middle District, as it appears that all

of the relevant acts and/or omissions alleged by Hayes in connection with treatment

of his HCV occurred at Union C.I.

## E.   Availability of Process to Compel the Attendance of Witnesses

It is unclear whether Hayes' witnesses (presumably, his medical providers)

would be unwilling witnesses that would require process to compel their attendance

at a trial.   Assuming they would be unwilling by virtue of their past or present

employment relationship with Defendants, this factor appears to weigh neutrally in

---

[4] As previously noted, Hayes' claims against former Secretary Jones were dismissed pursuant to their settlement (*see* ECF Nos. 145, 148).   Therefore, the court need not consider the convenience of this Defendant is determining whether transfer to the Middle District is appropriate.

the transfer equation.   A federal court may compel the attendance of a person within 100 miles of where the person resides, is employed, or regularly transacts business in person.   *See* Fed. R. Civ. P. 45(c)(1).   As previously discussed, Hayes' treating physicians are likely in or near Union County, which is in the Middle District.   But Union County is within 10 miles of the Gainesville Division of the Northern District (though it is more than 100 miles from the Tallahassee division of this court, where the case was filed).   So this factor appears to be neutral.

### F.    Relative Financial Means of the Parties

The corporate Defendants clearly have greater means than Hayes, an individual prisoner proceeding pro se.[5]   Hayes' costs of litigating this case could include reproduction costs of discovery documents and witness attendance and mileage fees.   Since Hayes' witnesses will likely be his treating physicians at Union C.I., this factor appears to weigh in favor of transfer to the Middle District.   *See Dwyer v. Gen. Motors Corp.*, 853 F. Supp. 690, 694 (S.D.N.Y. 1994) (large corporation was better able to absorb litigation costs than was an individual plaintiff).

---

[5]   At Hayes' request, the court twice notified all attorneys registered with the court's electronic filing system of the opportunity to provide Hayes with pro bono representation in this case (*see* ECF Nos. 3, 11, 107, 108).   So far, counsel has not appeared on Hayes' behalf.

**G.     Forum's Familiarity with Governing Law**

This factor weighs equally as both the Middle District and this court are well familiar with the law governing prisoners' Eighth Amendment claims of deliberate indifference to medical needs.

**H.     Plaintiff's Choice of Forum**

A plaintiff's choice of forum should not be disturbed unless his choice is clearly outweighed by other considerations.  *See Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 260 (11th Cir. 1996).  This presumption, however, is greatly diminished when "there is no material connection between the forum and the events underlying the cause of action."  *Harvard*, 408 F. Supp. 3d at 1264 (internal quotation marks and citation omitted); *A.J. Taft Coal Co., Inc. v. Barnhart*, 291 F. Supp. 2d 1290, 1310 (N.D. Ala. 2003); *Gould v. Nat'l Life Ins. Co.*, 990 F. Supp. 1354, 1358 (M.D. Ala. 1998) ("[W]hen 'the operative facts underlying the cause of action did not occur within the forum chosen by the Plaintiff, the choice of forum is entitled to less consideration.'") (quoting *Garay v. BRK Elec.*, 755 F. Supp. 1010, 1011 (M.D. Fla. 1991)); *Prather v. Raymond Constr. Co., Inc.*, 570 F. Supp. 278, 284 (N.D. Ga. 1983) ("[W]here the forum selected by Plaintiff is not connected with the parties or the subject matter of the lawsuit, it is generally less difficult than

otherwise for the defendant, seeking a change of venue, to meet the burden of showing sufficient inconvenience to tip the balance of convenience strongly in the defendant's favor.") *see also, e.g.*, *Baker*, 2009 WL 1098482, at *3 (N.D. Fla. 2009) ("[A] plaintiff's choice of forum may be accorded lesser weight where the forum lacks a significant connection with the underlying claim or operative facts.").

As previously discussed, the operative facts occurred at Union C.I., and Hayes is still residing there.   Therefore, this factor weighs in favor of transferring venue to the Middle District.

## I.   Trial Efficiency and the Interest of Justice

A court should also consider "the unfairness of burdening citizens in an unrelated forum with jury duty" for a case that has no connection with the state and district.   *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981).   As the Supreme Court has stated:   "Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation."   *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508–09 (1947).[6]   The Court also recognized that there "is a local interest in having localized controversies decided at home." *Id.* at 509.

---

[6]  The enactment of § 1404 superseded *Gulf Oil Corp. v. Gilbert*.   *See Am. Dredging Co. v. Miller*, 510 U.S. 443, 449 n.2 (1994).   Courts continue to look to the so-called "*Gilbert* factors," however, in addressing motions to transfer pursuant to § 1404(a).

Case No.:   4:19cv97/MW/EMT

Because Hayes settled his claim with former FDOC Secretary Jones, the Northern District community no longer has any relation to this litigation.  Taking into consideration the totality of the circumstances of this case, the court finds that trial efficiency and the interest of justice would best be served by transfer to the Middle District of Florida.

### J.    Conclusion

As set forth above, the court concludes that this action could have been brought in the Middle District of Florida and that the balance of § 1404(a) interests favors transfer to that forum.  Therefore, the undersigned recommends transfer of this case the United States District Court for the Middle District of Florida, pursuant to 28 U.S.C. § 1404(a).

## V.    CONCLUSION

Hayes satisfied the PLRA's exhaustion requirement prior to filing this § 1983 action.  And Hayes' Amended Complaint states a plausible claim for relief against Corizon and Centurion.  Therefore, Defendants' motions to dismiss should be denied.  Additionally, considering the totality of the circumstances of this case, the court finds that this case should be transferred to the Middle District of Florida, pursuant to 28 U.S.C. § 1404(a).

Case No.:  4:19cv97/MW/EMT

Accordingly, it is respectfully **RECOMMENDED**:

1.     That the motions to dismiss filed by Defendants Corizon and Centurion (ECF Nos. 116, 119) be **DENIED.**

2.     That this case be **TRANSFERRED** to the United States District Court for the Middle District of Florida.

3.     That the clerk of court close this case.

At Pensacola, Florida this <u>22</u>nd day of September 2020.


*/s/ Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**


<u>**NOTICE TO THE PARTIES**</u>

**Objections to these proposed findings and recommendations must be filed within fourteen days of the date of the Report and Recommendation. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.</u> An objecting party must serve a copy of the objections on all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**